## STONE, SAND AND GRAVEL COMPANY *v.* UNITED STATES.

### ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 302.   Argued April 23, 1914.—Decided June 8, 1914.

Where the contract contains a provision for a method of annulment and liquidated damages in case of a breach by failure to commence work and the Government avails of that provision it is only entitled to the liquidated damages and cannot recover damages for difference in cost on reletting the contract under a provision for failure to complete or abandonment after commencing the work. *United States* v. *O'Brien*, 220 U. S. 321, distinguished.

The benefit and burden of a provision in a Government contract giving a right to annul in consequence of a breach by failure to commence work must hang together and the Government cannot avail of the former without accepting the latter.

195 Fed. Rep. 68, reversed.

THE facts, which involve the liability of a contractor and its surety under a contract with the Government for excavation work, are stated in the opinion.

*Mr. William Marshall Bullitt*, with whom *Mr. Henry C. Willcox* and *Mr. T. M. Miller* were on the brief, for plaintiffs in error:

The contract as construed in *United States* v. *O'Brien*, 220 U. S. 321, means: Clause A: If the contractor (1) fails to begin work on the day specified or (2) fails (in the judgment of the Government engineer) to prosecute the work faithfully, then the United States may annul the contract, i. e., refuse to perform it further; in which event the United States may keep all money or retained percentages in its hands, but shall have no further damages.

Clause B: On the other hand, if the contractor fails to

complete work by the time agreed on, whether such failure be due to (1) a repudiation or refusal amounting to an anticipatory breach or (2) abandonment after doing some work or (3) mere failure to complete though still working at the expiration of the contract period, then in either such event, the United States may recover the excess cost of completing the work. *Farrelly* v. *United States*, 159 Fed. Rep. 671; *United States* v. *O'Brien*, 163 Fed. Rep. 1022; *S. C.*, 220 U. S. 321.

When the United States annulled the contract and retained the $6,206.69 money or reserved percentage due the contractor (which clause A authorized it to retain), then *ipso facto* the United States exercised the sole, exclusive and entire right it had under the contract; and it cannot hold the contractor liable for the excess cost of completing the work, which it had, by annulment, prohibited the contractor from further trying to perform.

Clause A calls for liquidated damages. *United States* v. *O'Brien*, 220 U. S. 321; *Sun Printing Ass'n* v. *Moore*, 183 U. S. 642, 669; *United States* v. *Bethlehem Steel Co.*, 205 U. S. 105, 119.

As clause A fixed the forfeiture of retained pay as the penalty to a contractor upon an annulment under the conditions specified in clause A, the United States cannot claim an inherent right to further damages under clause A. *United States* v. *O'Brien*, 220 U. S. 321, 327.

Clause B (which is the only clause in the contract permitting the United States to recover the excess cost of completion) never came into operation against the contractor; and hence no recovery can be had under its provisions. The petition does not declare upon a breach of clause B. There is no "failure to complete" when the contractor is stopped from further work by an annulment of his contract. Cases *supra*.

There were two independent grounds why there could be no recovery in the *O'Brien Case*, both of which exist here.

See also *Quinn* v. *United States*, 99 U. S. 30; *Sparhawk* v. *United States*, 134 Fed. Rep. 720; *United States* v. *McMullen*, 222 U. S. 460; *Graham* v. *United States*, 231 U. S. 474; *United States* v. *Maloney*, 4 App. D. C. 505.

The American Surety Company was released by reason of the 50 days' extension of time, which the United States granted to the contractor without the knowledge or consent of the surety; which extension was not made pursuant to any reserved power in the contract.

The time of beginning was material and was of the essence of the contract.

The extension of time for beginning was permissible only for freshets, ice, etc. *United States* v. *Gleason*, 175 U. S. 588, 604.

The extension was not granted on account of freshets, ice, etc..

The contractor gave a valuable consideration for the extension; it was not a mere forbearance by the Government.

The surety never consented in advance to the extension except on account of freshets, ice, etc.

The surety was released by the extension. *Reese* v. *United States*, 9 Wall. 13; *Earnshaw* v. *Boyer*, 60 Fed. Rep. 528; *United States* v. *Freel*, 186 U. S. 309. *United States* v. *McMullen*, 222 U. S. 460, and *Graham* v. *United States*, 231 U. S. 474, distinguished.

Even if defendants are liable for all the damages suffered by the Government, the excess cost of completing the work under the Atlantic Gulf and Pacific Co. contract, is not the proper measure of damages, owing to vital differences between the original contract and the relet contract.

Excess cost of completion is the proper measure of damages, but it must be for doing substantially the same work, under substantially the same conditions as the original

contract called for. *United States* v. *McMullen,* 222 U. S. 460, 467; *Graham* v. *United States,* 231 U. S. 474, 481; *United States* v. *Weisburger,* 206 Fed. Rep. 641, 645; *United States* v. *U. S. F. & G. Co.,* 194 Fed. Rep. 611, 615, 617; *Am. Bonding Co.* v. *United States,* 167 Fed. Rep. 910, 915, 922; *Chesapeake Transit Co.* v. *Walker,* 158 Fed. Rep. 850, 856, 858; *United States* v. *Walsh,* 115 Fed. Rep. 697; *City of Goldsboro* v. *Moffat,* 49 Fed. Rep. 213, 216.

The relet contract contained five new and more onerous conditions, which increased the cost of the work, and hence destroyed the value of the excess cost as a true measure of damages.

Clause A was changed to impose the excess cost of completion as a penalty for being slow; indemnity was required against patents; definite time limit imposed; cost of superintendence was imposed; the United States retained the right of rejection, and compelled the contractor to guarantee work as a whole.

*The Solicitor General,* with whom *Mr. Francis H. Mc-Adoo,* Special Assistant to the Attorney General, was on the brief, for the United States:

The Government's right of action on the breach was not lost by annulling the contract. *United States* v. *McMullen,* 222 U. S. 460; *United States* v. *O'Brien,* 220 U. S. 321.

The measure of recovery for the breach was the excess cost of completing the work and was not limited by Clause A to liquidated damages. *United States* v. *Maloney,* 4 App. D. C. 505.

The Government had a right to repudiate the contract on common-law principles, and is entitled to recover actual damages for the breach. *Bollman* v. *Burt,* 61 Maryland, 415; *Cleveland Rolling Mill* v. *Rhodes,* 121 U. S. 255; *Johnson* v. *Allen,* 78 Alabama, 387; *Norrington* v. *Wright,* 115 U. S. 188; *Pope* v. *Porter,* 102 N. Y. 366.

The defendant surety company was not discharged by the extension of time.

The surety consented in advance to the extension which was granted to the contractor. *Graham* v. *United States*, 231 U. S. 474; *United States* v. *McMullen, supra.*

Even if the surety did not so consent, it was not discharged by the extension, since it suffered no damage thereby. *Atlantic Trust & Deposit Co.* v. *Town of Laurinburg*, 163 Fed. Rep. 690; *Baglin* v. *Title Guaranty & Surety Co.*, 166 Fed. Rep. 356; *Guaranty Co.* v. *Pressed Brick Co.*, 191 U. S. 416 (and other cases cited in brief).

The contract with the Atlantic, Gulf & Pacific Company was competent evidence to show the excess cost of completing the work. *Baer* v. *Sleicher*, 153 Fed. Rep. 129; *Graham* v. *United States, supra*, 481; *New York* v. *Second Ave. R. R. Co.*, 102 N. Y. 572; *United States* v. *McMullen, supra*, 471.

MR. JUSTICE LURTON delivered the opinion of the court.

This was an action by the United States against the Stone, Sand and Gravel Company, a corporation, hereinafter styled the contractor, and its surety, the American Surety Company of New York, to recover the excess cost of completion of a certain contract for excavating 7,500,000 cubic yards of earth within certain designated localities in the work of improving the harbor of Vicksburg, Mississippi. For this work the United States agreed to pay 8.49 cents per cubic yard as the work progressed and the contractor agreed to begin active work on or before December 5, 1899, with sufficient force and plant for an output of not less than 260,000 cubic yards per month, to be increased on or before June 5, 1900 to a plant adequate for an output of 330,000 cubic yards per month. Subsequently, upon application of the contractor, the time for beginning was extended to January 24, 1900. While by

January 24 the contractor had made large expenditures in preparing to commence work it had not on that day assembled the necessary force or plant. For this reason the Chief of Engineers on the following day confirmed a prior, anticipatory, recommendation of the engineer in charge that the contract should be annulled. An application for an extension of time was denied by the Secretary of War and on March 7, 1900 formal notice was given to the contractor, as required by the contract, that it had failed to prosecute the work of excavation, etc., "in accordance with specifications and requirements . . . and the said contract is hereby annulled." The work was relet at price of 12.4 cents per cubic yard, making an excess cost of $228,201.91, and an action was brought and judgment had against the contractor for that sum, minus a credit of $6,206.69, on account of certain voluntary work of an experimental character, which sum had been retained by the United States. There was also judgment against the Surety Company for $75,000, the full penalty of the bond.

The only breach of contract alleged was the failure to begin active operations on the day stipulated with a plant and force adequate to produce the monthly output required. The breach is confessed, but the error insisted upon here is that the contract, for such a breach, limits the measure of recovery to liquidated damages, namely, a forfeiture of all money or retained percentages due or to become due under the contract, and that the court below erred in allowing as damages the excess cost of the work under the reletting.

The clauses of the contract which give rise to this contention occur in the standard form of contract used by the War Department, known as form 19, and are the same clauses construed by this court in *United States* v. *O'Brien,* 220 U. S. 321. The clauses involved for purposes of reference may be described as clauses A and B. In clause A

it is expressly provided that if the contractor "fail to commence with the performance of the work on the day specified herein, or shall, in the judgment of the engineer in charge, fail to prosecute faithfully and diligently the work in accordance with the specifications and requirements of this contract, then, in either case, the party of the first part, or his successor legally appointed, shall have power, with the sanction of the Chief of Engineers, to annul this contract by giving notice in writing to that effect . . . and upon the giving of such notice, all money or reserve percentage due or to become due . . . by reason of this contract shall be and become forfeited to the United States. . . ." The engineer in charge is thereupon authorized, if an immediate performance of the work, "be, in his opinion, required by the public exigency, to proceed to provide for the same . . .", as prescribed in § 3709, Revised Statutes.

Following clause A are three other clauses dealing with changes in the work, cost of extra work and liabilities for labor and material furnished. Then comes clause B, which reads as follows:

"It is further understood and agreed that in case of failure on the part of the party of the second part to complete this contract as specified and agreed upon, that all sums due and percentage retained, shall thereby be forfeited to the United States, and that the said United States shall also have the right to recover any or all damages due to such failure in excess of the sums so forfeited and also to recover from the party of the second part, as part of said damages, whatever sums may be expended by the party of the first part in completing the said contract, in excess of the price herein stipulated to be paid to the party of the second part for completing the same."

That there was no abandonment of the contract by the plaintiffs in error is too plain to need discussion. Large expenditures were made to get ready, and further exten-

sions of time were sought both before and after notice of annulment. The explanation of the failure to get ready lies in the obvious fact that the contract was larger than the financial capacity of the contractor, and the United States was plainly within its contract right in putting it off the job and in reletting the work.

What is the measure of recovery against the contractor where the Government "annuls" the contract for failure to commence the work upon a stipulated day? The right to "annul," that is, to prohibit the contractor from going on under the contract, is plainly conferred in two distinct cases by clause A,—first, when the contractor fails to begin upon the day stipulated, and, second, when, having commenced the work, the contractor fails, "in the judgment of the engineer in charge to prosecute the work faithfully and diligently." In either case the same section specifically declares that upon the giving of the notice of annulment, "all money or reserve percentage due or to become due to the contractor . . . shall be and become forfeited to the United States."

It is therefore obvious that if the right to annul this contract depends upon clause A, the measure of damages recoverable in this action is limited by that clause to the forfeiture of all moneys or retained percentages due or to become due under the contract. *United States v. O'Brien, supra.* This is plainly conceded in the brief of the Solicitor General.

To escape confession of error in the judgment below, in so far as the United States was permitted to recover the excess cost of reletting the job, it has been argued that the right to annul the contract did not arise out of clause A, but was "a right inherent" in this and every other contract when time is of the essence, and that when there was, as in this case, a breach of an express agreement to begin the work upon a certain day, the right to annul was complete; and upon annulment the right to

recover all actual damages followed. Of course, this so-called "inherent right" to annul a contract with the consequent right to recover all actual damages as for a complete breach, are rights supposed to arise not out of any express agreement but out of the common law. But the assumption that aside from clause A an agreement to begin such a work on a particular day would be such a vital term of the contract as to justify the other party in an immediate annulment if the work was not so begun is seriously challenged. The vital character of time to the contract would depend upon its nature and particular circumstances. These might be such that time would not be of the essence of the contract at all. Any resort to the contract here involved as making time the essence of the agreement must include clause A, which expressly determines the consequences. Such an appeal to the contract would naturally result detrimentally to the argument here made, since the contract while making time vital provides also for the consequence of a breach in that respect. The benefit and the burden of clause A must hang together.

But we need not deal with the consequences as if clause A had been omitted. The right might have been inherent or not so vital as to justify the rigor of annulment. Both parties elected to deal with the matter by express stipulation and that should be and is the end of it. In such a situation there would be no justice in straining the contract for a construction which would limit its application to cases where the right of annulment would not exist without it. This contract was prepared in advance of the bidding by the United States. The bidder was required to dig with strict reference to its terms. One term was that the work should begin with a plant and force of definite capacity on or before a particular day. Another was that if this term was not complied with the United States might annul the contract and that as a consequence

of such annulment all money earned under it should be forfeited. This forfeiture is not made dependent upon the existence of any actual damage. Thus damages were by stipulation liquidated. That such damages may be in this instance inadequate may be true, but the fact affords no ground for frittering away the agreement by fanciful distinctions which never entered the head of either party to it.

The plain purpose was to obtain for the United States the right to take the contract from a bidder who should break his agreement at its threshold and let the work to another, possibly for a better price. At any rate the right to annul for a breach in respect of the time of beginning was a valuable right, and for it the Government stipulated and liquidated the damages in the event of its exercise. The contractor would not only lose his contract, but also would forfeit everything due him. The agreement settled the right and all the consequences of its exercise.

There is nothing in the case of *United States* v. *O'Brien, supra,* which would justify the limitation that the United States would now have us place upon this plain provision of the contract. The contract in that case was a dredging contract. The work was to begin on a day named and be completed on another. The contract was according to form 19 and included the two clauses, A and B, above set out. The work was begun on time. The first member of clause A was therefore eliminated from any consideration. The dredging did not progress to the satisfaction of the engineer in charge who elected to stop the contractor from going on, when, confessedly, time enough remained to complete the work within contract time. The United States, under these circumstances, sought to recover the excess cost of completing the work, but this court held that such excess cost could only be recovered under clause B for a failure to complete according to the terms of the agreement. There had been no breach of the agreement,

as time remained to finish the work .had the contractor
not been prohibited from going on because the engineer
in charge was not satisfied with the progress of the job.
But the right to annul for the latter reason was a right
conferred by clause A, with the damages limited as therein
provided.   The United States was precluded from the
rule of damages prescribed by clause B, and being forced
to justify under clause A was held bound by the limitation
of that clause.

The right to annul is expressly conferred by clause A
for a failure to begin on the stipulated day.   The United
States resorted to that clause for its authority and pursued
the procedure therein pointed out.   It is plainly bound
by the limitation of damages therein prescribed.

*For the error in not so confining the recovery, the judgment
is reversed and a new trial awarded.*