## BOSCH MAGNETO CO. v. RUSHMORE.

(Circuit Court of Appeals, Second Circuit. November 13, 1918.)

### No. 23.

1. CONTRACTS ☞278(2)—BREACH.

In an action for damages for breach of contract providing that the buyer of an established business for the making of automobile starters should continue to advertise the starters under the name of the seller, or pay a stipulated sum, *held*, that the covenant for advertising, which must be deemed single, was broken by the buyer.

2. DAMAGES ☞78(1)—PENALTY—LIQUIDATED DAMAGES.

Where a contract for the sale of an established business for the manufacture of automobile starters required the seller to remain out of such business for two years, but also provided that the buyer should continue to advertise the starters under the name of the seller for three years, and in event of failure should pay $100,000, *held*, that the provision for payment was one in the nature of liquidated damages, and was not invalid as a penalty.

Ward, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Southern District of New York.

Action by Samuel W. Rushmore against the Bosch Magneto Company. There was a judgment for plaintiff, and defendant brings error. Affirmed.

The plaintiff below sued for breach of contract executed on the 20th of May, 1914. Prior thereto the plaintiff below was engaged in the manufacture and sale of automobile dynamos, engine starters, automobile lamps, projectors, locomotive headlights, and other goods of a like character, under the trade-name of the Rushmore Dynamo Works, with a factory at Plainfield, N. J. He was the sole owner of certain foreign and United States letters patent, as well as the real estate and factory buildings equipped with machinery, which he used in conducting his business. The name "Rushmore" had obtained a reputation in the trade for this line of goods, and particularly the "Rushmore starter" had reached fame and considerable patronage. The defendant below purchased the business of the plaintiff below for $750,000, under the terms of the contract sued on herein, and in addition the real estate, factory, and equipment, and the patents referred to. Under the contract the plaintiff below was not to engage in a similar line of business for a period of two years, and the defendant below covenanted as follows:

"It is further understood and agreed by and between the parties hereto that the party of the second part [defendant below] shall for a period of three years beginning May 20, 1914, and ending May 20, 1917, describe any starter or starters manufactured under the patents hereby agreed to be sold by the party of the first part, in all of its advertisements and printed matter and on all name plates or in any of the manners or styles of advertising as the Rushmore starter, or the Bosch-Rushmore starter, or System Rushmore; * * * that this agreement shall for said period of three years above specified be binding on the successors and assigns of the party of the second part herein, and the party of the second part hereby further covenants that in any sale or license of the patents or patent rights during said period to any person, firm or corporation it will require and bind any such persons, firm or corporation so purchasing or acquiring any of said patents or patent rights to the same extent as it, the party of the second part, has agreed to in this paragraph; * * * and it is further understood and agreed by and between the parties hereto that upon the expiration of said three year period the obligations of the party of the second part as contained in this paragraph shall cease and determine. * * *

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
· 255 F.—30

"It is further understood and agreed by and between the parties hereto that any time during the three year period specified in the last paragraph the party of the second part shall upon payment to the party of the first part of the sum of one hundred thousand dollars ($100,000) be freed and absolved from the further performance of its obligations as set forth in said paragraph last above contained, and the party of the first part will upon the receipt of the said sum of one hundred thousand dollars ($100,000) fully and in all respects release the party of the second part from the further performance of its said obligations; * * * and it is further agreed that in case of breach of the provisions of the foregoing paragraph by the party of the second part, this sum of one hundred thousand dollars ($100,000) shall be paid to the party of the first part as liquidated damages."

After the sale and until the middle of July, 1914, the plaintiff below managed the business for the defendant below, continuing the advertisements at its expense. Thereafter the defendant below published advertisements announcing to the trade the purchase of the business of the plaintiff below and its future continuation, and thereafter and until January 19, 1917, advertised extensively. The defendant below was engaged in a line of business similar to that of the plaintiff below. Out of 996 advertisements in trade papers and other publications, only 14 contained any advertisement mentioning the name "Rushmore," "Rushmore starter," or "System Rushmore." Of these, about 64 specifically referred to starters and of these 14 comprised advertisements of starters manufactured pursuant to the Rushmore patents; but 50 advertisements which did not mention the name "Rushmore" have, as part of the advertising matter, photographs of the "Rushmore" starter. Rushmore's name is not in any way used in the advertisement, and it would appear to the ordinary reader that it was a starter of the Bosch make. Under a business arrangement with the manufacturers of the Marmon car, the starting system is advertised, but without using the name "Rushmore." Of the 14 advertisements in which the name "Rushmore" is used, 11 were published in 1915, 2 in 1916, and none in 1917.

Both litigants move for the direction of a verdict, and the District Judge, holding that there was a substantial breach of the contract and that the parties had agreed upon $100,000 as liquidated damages, gave judgment for the plaintiff below in said sum. Defendant below appeals.

William G. Fitzpatrick, of Detroit, Mich. (Abram I. Elkus, of New York City, of counsel), for plaintiff in error.

George C. Dean, of New York City (Irving M. Obrieght, of New York City, of counsel), for defendant in error.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge (after stating the facts as above). [1] Under the contract, the defendant below obligated itself to advertise for three years, to describe any starter or starters manufactured under the patents conveyed in all of its advertisements and printed matter, and on all name plates or in any of the manners or styles of advertising, as the "Rushmore starter," or the "Bosch-Rushmore starter," or "System Rushmore." It bound its assignees and successors to do likewise, and the parties agreed that, in lieu of such advertisement, the defendant below might pay $100,000 and thus be freed from the obligation so to do, and in the event of a breach of this obligation to advertise the parties agreed upon $100,000 as liquidated damages.

A reading of various samples of the advertisements and printed matter which the defendant below used and the method it indulged in, indicates a clear desire to so advertise as to convey to the mind of the average reader, and to the trade, that the ignition, lighting, and

starting of the motor car could best be served by products of the defendant below, and while there is an actual picture displaying the starter of the plaintiff below, nowhere is credit given, as required by the terms of the contract, to Rushmore for the starter, but in rather precise words the reader is led to believe that it is in fact the Bosch starter.

The defendant below urges that the clause of the contract providing for $100,000 as liquidated damages is, in fact, a provision fixing a penalty, and that, if it be treated as a question of liquidated damages, the contract was substantially performed by the Bosch Company, and there was no breach.

We agree with the District Judge that there was a substantial breach of the contract to advertise the Rushmore starter. It is plain the parties intended to permit the defendant below to follow one of two courses: First, it might, if it saw fit, do no advertising whatever at a price of $100,000 as fixed upon by the parties, and the plaintiff below, upon the doctrine of alternative obligations, could have recovered that sum if it was not paid. But the defendant below did, in fact, do some advertising and choose to pretend to carry out its obligation of the contract by advertising, and thus did not seek to avoid or cancel the advertising obligation as it might have done. It is clear that the contracting parties valued the advertising as worth $100,000 to Rushmore. While the defendant below could eliminate advertising by paying $100,000, yet if it started to do so, and failed of substantial performance, the plaintiff below measured his loss at $100,000, and the defendant below agreed that this would be his damages.

[2] The fixed amount of $100,000 was not intended as, nor was it, a penalty. Many of the authorities determined the question of penalty as distinguishable from liquidated damages, by considering the reasonableness of the agreement, and attempted to ascertain what the liquidated damages bore proportionately to the loss actually suffered. Where it was found that the sum named is not disproportionate to the damages that might result from a breach, the stipulation was regarded as one of liquidated damages; otherwise, it was called a penalty.

In United States v. Bethlehem Steel Co., 205 U. S. 105, 27 Sup. Ct. 450, 51 L. Ed. 731, the court said:

"There has in almost innumerable instances been a question as to the meaning of language used in that part of a contract which related to the payment of damages for its nonfulfillment, whether the provision therein made was one for liquidated damages, or whether it meant a penalty simply, the damages to be proved up to the amount of the penalty. * * * The courts at one time seemed to be quite strong in their views, and would scarcely admit that there ever was a valid contract providing for liquidated damages. Their tendency was to construe the language as a penalty, so that nothing but the actual damages sustained by the party aggrieved could be recovered. Subsequently the courts became more tolerant of such provisions, and have now become strongly inclined to allow parties to make their own contracts, and to carry out their intentions, even when it would result in the recovery of an amount stated as liquidated damages, upon proof of the violation of the contract, and without proof of the damages actually sustained. * * * The question always is: What did the parties intend by the language used? When such intention is ascertained, it is ordinarily the duty of the court to carry it out."

The determination of the question depends upon the meaning and intent of the parties, as gathered from a full view of the provisions of the contract, the terms used to express the intent, and the peculiar circumstances of the subject-matter of the agreement. The true question is: What was the contract? 13 Cyc. 90.

In Stone, Sand & Gravel·Co. v. United States, 234 U. S. 270, 34 Sup. Ct. 865, 58 L. Ed. 1308, the contract provided for "a forfeiture of all moneys and retained percentages due or to become due in case of failure to perform and due notice thereof"; and the court held this to be liquidated damages.

In Maryland, etc., Co. v. United States, 241 U. S. 184, 36 Sup. Ct. 545, 60 L. Ed. 945, a provision fixing a penalty for failure to complete on time of $20 per day was held to be liquidated damages.

In Wood v. Niagara Falls Paper Co., 121 Fed. 818, 58 C. C. A. 256, this court, through Wallace, J., said:

"It is .not disputed that, in view of the subject-matter and nature of the agreement and the difficulty of estimating the exact damages likely to be sustained by the defendant in the event of a breach by the plaintiffs, it was competent for the parties to agree upon a fixed sum as liquidated damages for a breach; nor is it disputed that by the contract they did so agree. It is urged, however, that when it is made to appear in an action for the breach that no actual damages have arisen, notwithstanding the parties have agreed upon stipulated damages, the party in default is entitled to be relieved. That proposition is not sanctioned by the weight of authority. On the contrary, according to authority which is controlling upon this court, the law is that the naming of a stipulated sum in such a contract, to be paid for the nonperformance of a covenant, is conclusive upon the parties in the absence of fraud or mutual mistake, and evidence aliunde in respect to the damages actually arising from the breach cannot be received."

It is apparent here the intent, as expressed in the contract and the stipulated facts, was that Rushmore was to stay out of the starter business for two years, and the defendant below was not only to manufacture and market his former product, but was to advertise it for a period of three years. Plaintiff below valued the advertising, which would keep his name before the public, and thus render it easier for him to enter business after the expiration of two years, at $100,000. We think the defendant below intended the same thing. The contract of advertising consisted of one covenant. We do not think that the covenant of advertising can be said to be separable. It consisted of one covenant, which has been breached in a very substantial way, and the damages agreed upon by the contracting parties must flow therefrom.

Judgment affirmed.

WARD, Circuit Judge (dissenting). The relevant language of the agreement is that the Bosch Company shall "describe any starter or starters manufactured under the patents hereby agreed to be sold by the party of the first part in all of the advertisements and printed matter and on all the name plates or in any of the manners or styles of advertising, as the Rushmore starter or the Bosch-Rushmore starter or System Rushmore." This provision applies naturally, and I think obviously, only to advertisements of the Rushmore starter. I can-

not construe it as requiring the Bosch Company to advertise the Rushmore starter in every advertisement it published of any of its various equipments. I think the Bosch Company did not obligate itself either to sell or to advertise the starter. It owned it, and might prefer to suppress it, or it might prefer to sell it without advertising, and advertise better or more profitable starters. Unless under this contract complainant could compel the Bosch Company to advertise and sell his starter throughout the three years, he cannot complain of its not advertising it in the 932 advertisements in which it is not mentioned at all, because the company in those advertisements was advertising its own Bosch starter. For what the Marmon Company did in its catalogues the defendant is, as Judge Hand found, not liable, having merely sold the equipment to that company. But the 50 advertisements in which the defendant inserted the cut of the Rushmore starter, without giving any credit to Rushmore, are plain violations of the contract.

Nor can I regard the payment of $100,000 as liquidated damages. It seems incredible to me that the parties could have intended that sum to be paid in case of one or of a few violations of the contract or to make no distinction between a violation continued for three years and a violation continued for one week. Cases like Wood v. Niagara Falls Paper Co., 121 Fed. 818, 58 C. C. A. 256, which apportion the damages to the default, as, for instance, $50 a day for each day of delay, are plainly quite different. Furthermore, it is incredible to me that, if Rushmore was entitled to have his starter mentioned in all the defendant's advertisements of every kind and shape, he made no complaint whatever during the three years throughout which it was hardly ever mentioned. This is strong evidence that he understood the contract to mean that he was to have credit for the starter only in advertisements in which it was mentioned.

I think the judgment should be reversed.