[Civ. No. 11293.   Third Dist.   May 31, 1967.]

NORMAN W. CALL, Plaintiff and Respondent, v. ALCAN PACIFIC COMPANY, Defendant, Cross-complainant and Appellant; GENERAL INSURANCE COMPANY OF AMERICA, Cross-defendant and Respondent.

Lambert, Lemmon & Winchell and James W. Winchell for Defendant, Cross-complainant and Appellant.

William D. Heekin for Plaintiff and Respondent.

Fitzwilliam, Memering, Stumbos & DeMers, Donald Walter and Marion H. Pothoven for Cross-defendant and Respondent.

FRIEDMAN, J.—Plaintiff Norman Call was the drywall and painting subcontractor for a low rent housing project located in Yuba City. Defendant Alcan Pacific Company was

the prime contractor. On July 25, 1963, Call withdrew his employees from the job. On the same date, July 25 (a Thursday), Alcan sent Call a telegram stating: "Your repeated failure to prosecute work diligently, including, but not limited to, the failure to maintain full crews and also pulling your crews off the Richland Housing Project, the most recent [of] which occurred today, you are hereby notified that unless you resume work with a full crew by Monday, July 29, 1963, we consider your contract terminated and take such action as authorized by our contract with you." On Monday, July 29, according to the trial court's findings, Alcan terminated the subcontract, taking possession of Call's materials, tools and appliances at the project site.

In September 1963 Call filed a lawsuit against Alcan, seeking an accounting and injunction. Alcan filed an answer and counterclaim, as well as a cross-complaint naming General Insurance Company of America, surety on Call's performance bond. General Insurance answered and filed a cross-complaint against Call. In April 1964 Call filed a new action against Alcan, seeking damages for breach of the subcontract and conversion of his equipment. In October 1964 a court order directed consolidation of the two lawsuits except for the cross-complaint filed by General Insurance against Call (which was severed from the remainder of the litigation by stipulation). The consolidated action was tried without a jury. On May 12, 1965, the trial court entered findings and on May 24 a judgment in favor of General Insurance and against Alcan. On August 30, 1965, findings and judgment were entered against Alcan in favor of Call, awarding the latter $16,785 damages for breach of contract plus $750 conversion damages, less $1,657.78 as a sum found due to Alcan.

On September 30, 1965, Alcan filed a notice of appeal. Although the notice of appeal bore several captions, including that of its cross-action against General Insurance, it stated only that Alcan was appealing from the August 30 judgment in favor of Call, omitting any mention of the General Insurance Company's judgment of May 24. General Insurance contends that the notice of appeal does not constitute an appeal from the judgment in its favor, and in any event that it was not filed within the 60-day period fixed by rule 2, California Rules of Court. Status of Alcan's appeal vis-a-vis General Insurance is of no consequence if the August 30 judgment between Alcan and Call is to be affirmed. We turn to that judgment.

The trial court found that Call performed his subcontract until July 25, 1963, when he withdrew his employees from the construction site; that only a small amount of the subcontract remained to be performed; that earlier disputes and minor breaches had been waived or settled by negotiation and change orders and that the parties had by their actions waived arbitration provisions; that Call's cessation of work on July 25 and failure to work between then and July 29 did not constitute a material breach of the subcontract; that the project owner's inspection procedures were unreasonable; that, in choosing the date of July 29 on which to terminate the job, Alcan refused further performance in the face of the subcontractor's minor breach; that Alcan's conduct on July 29 in terminating the job and seizing Call's equipment and materials was a material breach of contract by Alcan.

■ Alcan appeals on the judgment roll and not on a reporter's transcript. Thus its attack on the trial court's findings is confined to such errors as appear on the face of the record; the question of the sufficiency of the evidence is not open. (*Williams* v. *Inglewood Board of Realtors, Inc.*, 219 Cal.App.2d 479, 482 [33 Cal.Rptr. 289]; *Arruda* v. *Arruda*, 218 Cal.App.2d 410, 414 [32 Cal.Rptr. 257].)

Essentially Alcan contends that the trial court erred in ignoring special requirements of the painting subcontract. In article 3 of the subcontract Call, the subcontractor, agreed that time was of the essence, that he would conduct the work diligently and "supply a sufficiency of properly skilled workmen at all times to the satisfaction of the Contractor, . . ." Article 10 of the contract gave the prime contractor an option to terminate the subcontract under specified conditions.[1] Article 11 provided for the arbitration of disputes and included an agreement that "a dispute shall not interfere with the progress of the construction."

---

[1] Article 10 of the subcontract declared: "Should the Sub-Contractor, at any time during the progress of the work, refuse or neglect to prosecute his work in accordance with the provisions of this agreement until fully completed and accepted, due regard being had to acts of God, strikes and lockouts, after having been notified by the Contractor in writing to do so, or upon any other breach of this agreement in whole or in part . . . the Contractor shall immediately have the power to terminate the employment of the Sub-Contractor and/or to enter upon the premises and personally, by agent, or other subcontractors take possession of all materials, tools and appliances of every kind whatsoever thereon and to take active charge of said work, men, materials, tools and appliances of the Sub-Contractor for the purpose of carrying out the terms of this agreement, and may adopt such other means as he may deem necessary to complete this work and protect his interests . . . ."

A contract may contain a valid provision giving one or the other party an option to terminate it on specified conditions.[2] Here the subcontractor was required to supply a sufficiency of properly skilled workmen at all times to the satisfaction of the contractor. A provision requiring performance to the promisee's satisfaction does not make the contract illusory since he cannot act arbitrarily; rather, according to the character of the contract, he will be held either to the standard of satisfaction in good faith or the standard of a reasonable person.[3]

In a bilateral contract a "time of the essence" clause may be both a covenant and a condition precedent upon which a reciprocal duty of the promisee depends. The clause has different consequences in each of these roles. If enforcement of the clause will result in an excessive penalty or forfeiture, the courts will frequently ameliorate the offender's position by the application of equitable principles. (3A Corbin on Contracts, pp. 353, 358, 360.) On the other hand, if a duty of the promisee is expressly conditional on the promisor's timely performance, the condition must be observed unless the promisee excuses it by waiver or other action. (*Ibid.*, pp. 359-361.)

Where the contract expressly provides that the promisee may cancel it by written notice upon the promisor's failure of timely performance, the former has an option to terminate by giving the prescribed notice.[4] Even without an express termination option, a number of authorities indicate that an owner has common law right to cancel a building contract if the contractor, without fault of the owner, fails to comply with a "time of the essence" clause.[5] In any event, an option to terminate must be exercised in good faith.[6]

Such a clause, to be sure, may be waived. Nevertheless, where a promised performance has a continuous charac-

[2]*R. J. Cardinal Co.* v. *Ritchie*, 218 Cal.App.2d 124, 143 [32 Cal.Rptr. 545]; *Brawley* v. *Crosby etc. Foundation, Inc.*, 73 Cal.App.2d 103, 117-118 [166 P.2d 392].

[3]*Mattei* v. *Hopper*, 51 Cal.2d 119, 122-123 [330 P.2d 625].

[4]*Stone, Sand & Gravel Co.* v. *United States*, 234 U.S. 270, 278 [58 L.Ed. 1308, 1311, 34 S.Ct. 865]; *American-Hawaiian Engineering etc. Co.* v. *Butler*, 165 Cal. 497, 513 [133 P. 280, Ann. Cas. 1916C 44], 13 Am.Jur.2d, Building and Construction Contracts, § 103, pp. 98-99; 3A Corbin, *op. cit. supra*, p. 379.

[5]See cases cited 107 A.L.R. 1035 at p. 1037. In *Gold Min. & Water Co.* v. *Swinerton*, 23 Cal.2d 19, 27 [142 P.2d 22], the court states: "... when time is made of the essence of a contract, a failure to perform within the time specified is a material breach ...."

[6]*R. J. Cardinal Co.* v. *Ritchie, supra*, 218 Cal.App.2d at p. 144.

ter, waiver of one breach does not preclude the offended party from invoking his contract rights upon a later breach.[7] Thus, where time is expressly made of the essence, strict compliance may be waived and then reinstated by a definite notice or equivalent conduct.[8]

In the present case the issue was not whether Call, the subcontractor, had been guilty of a minor or material breach by the standards applicable to contracts ungoverned by express conditions on the subject; nor, whether Alcan's consequential action correlatively became a minor or material breach. Rather, the issues were whether the subcontractor's conduct has been such as to activate the termination clause of the contract; whether Alcan had exercised its option to terminate; if so, whether Alcan had acted in good faith; and whether earlier waivers or other conduct abrogated Alcan's right to insist on continuing timely performance in compliance with the written contract.

The findings presented to the trial court do not declare on these essential issues. The findings do not respond to the issues in the case, and the failure to find on material issues is reversible error.[9]

Call urges us to ignore the special subcontract provisions, arguing that they were part of the evidence underlying the findings, hence ineligible for consideration on this judgment roll appeal. To the contrary, a copy of the subcontract was incorporated by reference in Alcan's pleadings and hence became part of the judgment roll. (Code Civ. Proc., § 670.) Failure to find on the material issues presented by the parties' contract appears on the face of the record and requires reversal of Alcan's August 30, 1965, judgment.

We turn to Alcan's dubious appeal from the General Insurance Company's judgment. As to the imperfect notice of appeal, it is appropriate to express regret that such errors

_____

[7]*Woodard* v. *Glenwood Lbr. Co.,* 171 Cal. 513, 523 [153 P. 951]; *Extension Oil Co.* v. *Richfield Oil Corp.,* 52 Cal.App.2d 105, 108-109 [125 P.2d 895]; *Spotton* v. *Dyer,* 42 Cal.App. 585, 592 [184 P. 23].

[8]*American-Hawaiian Engineering etc. Co.* v. *Butler, supra,* 165 Cal. at p. 519; *Howard J. White, Inc.* v. *Varian Associates,* 178 Cal.App.2d 348, 353-355 [2 Cal.Rptr. 871]; see *American Type etc. Co.* v. *Packer,* 130 Cal. 459, 462-463 [62 P. 744].

[9]Code Civ. Proc., § 632; *De Burgh* v. *De Burgh,* 39 Cal.2d 858, 873 [250 P.2d 598]; *B. C. Richter Contracting Co.* v. *Continental Cas. Co.,* 230 Cal.App.2d 491, 504 [41 Cal.Rptr. 98]. Although the appeal record shows no request for additional findings or motion for new trial by Alcan, we have not been asked—nor do we find it possible—to supply the missing findings by implication. (See Code Civ. Proc., § 634; 2 Witkin, Cal. Procedure (1965 Supp.) Trial, § 118, pp. 667-668.)

should entangle court and counsel in avoidable procedural snarls. ■ A notice of appeal should be liberally construed unless the respondent has been misled. (Rule 1, Cal. Rules of Court; *Kellett* v. *Marvel*, 6 Cal.2d 464, 471 [58 P.2d 649].) No misleading appears. Although the appeal brief of General Insurance debates only the procedural aspects of the appeal, its counsel could have argued the substantive aspects as a precaution against rejection of its procedural position. The substantive aspects of the case have been briefed by the other parties.

■ Since the notice of appeal bore the caption of Alcan's cross-action against General Insurance, we construe it to extend to the judgment in the latter's favor.

■ Generally there can be only one final judgment between two parties or sets of parties in an action or proceeding.[10] The rule is aimed at preventing piecemeal appeals. Although there is an exception where several parties have distinct interests, no authority has been cited bringing a surety and principal within the exception. ■ When a lawsuit involves a single claim against a principal obligor and the surety on his bond, there is such a unity of interest between them that a judgment in favor of the latter alone is not a final judgment from which an appeal lies.[11]

Reversal of the judgment as to Call alone would leave the judgment in favor of General Insurance undisturbed. There is no finding of a material alteration of the subcontract without the surety's consent or of any other circumstance which would permit separation of the liability of Call and his surety. It seems appropriate and practical to adopt the position that the judgment in the surety's favor was premature rather than void; that it became final, hence appealable, upon entry of the judgment in the principal's favor. Thus Alcan's appeal was timely as to both judgments.

---

[10]*Nicholson* v. *Henderson,* 25 Cal.2d 375, 378 [153 P.2d 945]; *Bodine* v. *Superior Court,* 209 Cal.App.2d 354, 361 [26 Cal.Rptr. 260].

[11]*Nolan* v. *Smith,* 137 Cal. 360 [70 P. 166], so holds. *Rocca* v. *Steinmetz,* 189 Cal. 426, 427-428 [208 P. 964], partially overruled the *Nolan* decision on the ground that the latter had ignored the trial court's power under section 579, Code of Civil Procedure, to enter a ''several judgment.'' Notably, the subcontractor's performance bond in this case bound principal and surety jointly and severally. *Rocca,* however, involved joint tortfeasors. It left open the question whether *Nolan* v. *Smith* might properly apply to suits on bonds as a ''special class of cases.'' The question calls for an affirmative answer. When a lawsuit involves a single claim against principal and surety, an appellate court should not be subjected to their separate appeals.

The lack of material findings which characterizes the findings in Call's favor also characterizes the separate findings in favor of General Insurance Company. Both judgments are therefore reversed.

Pierce, P. J., and Regan, J., concurred.

A petition for a rehearing was denied June 23, 1967, and the petition of the cross-defendant and respondent for a hearing by the Supreme Court was denied July 26, 1967.