GILBANE BUILDING
COMPANY, Plaintiff,

v.

The NEMOURS FOUNDATION, et
al., Defendants.

Civ. A. No. 83-58-WKS.

United States District Court,
D. Delaware.

Jan. 25, 1985.

Stuart B. Young, Josy B. Ingersoll, Young, Conaway, Stargatt & Taylor, Wilmington, Del., George Anthony Smith, Randall F. Hafer, David A. Dial, Smith, Currie & Hancock, Atlanta, Ga., for Nemours.

Howard M. Berg, Paul R. Bradley, Howard M. Berg & Associates, Wilmington, Del., for Furlow Associates.

William Prickett, Richard R. Wier, Jr., Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., John A. Wolf, M. Hamilton Whitman, Ober, Kaler, Grimes & Shriver, Baltimore, Md., for Gilbane.

Frank O'Donnell, O'Donnell & Hughes, Wilmington, Del., Edward C. German, Peter E. Kane, German, Gallagher & Murtagh, Philadelphia, Pa., for Saxelbye.

William H. Sudell, Jr., Denison Hatch, Morris, Nichols, Arsht & Tunnell, Wilmington, Del., for DiSabatino.

Rodman Ward, Jr., Steven J. Rothschild, Edward P. Welch, Skadden Arps, Slate, Meagher & Flom, Wilmington, Del., David G. Lane, William D. Blakely, Lewis, Mitchell & Moore, Vienna, Va., for Dynalectric.

Victor F. Battaglia, Robert K. Beste, Jr., Biggs & Battaglia, Wilmington, Del., Jack Rephan, Paula J. Glaser, Braude, Margulies, Sacks & Rephan, Washington, D.C., for Pierce.

Roderick R. McKelvie, Ashby, McKelvie & Geddes, Wilmington, Del., Jeffrey G. Weil, Mark Klugheit, Dechert, Price & Rhoads, Philadelphia, Pa., for Frazer.

James S. Green, Connolly, Bove, Lodge & Hutz, Wilmington, Del., Howard D. Venzie, Jr., Kevin G. Amadio, Venzie, Phillips & Warshawer, Philadelphia, Pa., for Honeywell.

## OPINION

STAPLETON, Chief Judge:

DiSabatino & Sons, Inc. ("DiSabatino"), brought suit against The Nemours Foundation ("Nemours") on February 2, 1983, seeking to recover damages allegedly incurred by DiSabatino as a result of Nemours' alleged breaches of a construction contract ("the Contract"), and as a result of Nemours' alleged failure to exercise reasonable care with respect to DiSabatino's contract performance. (Civil Action No. 83–58). The dispute between these parties arises out of the performance by DiSabatino of construction work for Nemours on the Alfred I. duPont Hospital construction project ("the Project") in Wilmington, Delaware.

## BACKGROUND

DiSabatino was one of several prime contractors involved in the construction of this sophisticated hospital project. Subsequent litigation developed between and among Nemours and another of the prime contractors on the Project, Gilbane Building Company ("Gilbane"), two of Gilbane's subcontractors, Pierce Associates, Inc. ("Pierce") and Dynalectric Company ("Dynalectric"), Nemours' project architect, Saxelbye, Powell, Roberts & Ponder, Inc. ("the Architect") and the Architect's engineering firm, Furlow Associates ("the Engineer"). In addition, litigation recently was initiated by Honeywell, Inc. ("Honeywell"), also a subcontractor of Gilbane, against Gilbane and H.B. Frazer Company ("Frazer"), a subcontractor to Honeywell. These pending lawsuits have been consolidated for trial.

In response to DiSabatino's claim, Nemours counterclaimed against DiSabatino for liquidated damages as provided for in the Contract in the event DiSabatino did not substantially complete its work by the contractually mandated completion date, as well as for indemnification against any actual losses which Nemours might incur as a result of claims made against it by the other contractors on the Project. It appears that the claims advanced against Nemours by Gilbane, Pierce, and Dynalectric are based on allegations that DiSabatino actively interfered with the contemporaneous and follow-on activities of Gilbane, Pierce and Dynalectric on allegations that DiSabatino's failure to meet its deadline increased the cost of those follow-on activities. Although DiSabatino and Nemours dispute the potential amount of the liquidated damages recoverable by Nemours, those liquidated damages are approximately $222,500. The claims made against Nemours by the other contractors on this project, and for which Nemours seeks indemnity from DiSabatino, are believed to exceed $15,000,000.

By this motion, DiSabatino seeks partial summary judgment limiting its liability, if any, to the liquidated damages provided for in the Contract. Nemours asks the Court to declare that the Contract provided for the liquidation of some, but not all, of the damages flowing from DiSabatino's alleged contract breaches and negligence pertaining to the Project.

## THE CONTRACT

Nemours and DiSabatino entered into the Contract on May 14, 1979. It provided for the construction of Phase 5EXT of the Project. The hospital was being constructed in phases. Phase 5EXT was scheduled to follow Phases 1, 2, 3, 4 and 5A, and to precede the final phase, Phase 5B. Each phase was to be performed by a separate prime contractor. The principal work involved in Phase 5EXT was enclosing the building by erecting large blocks of limestone on the exterior of the structural steel framework and by installing windows and doors where appropriate around the structure. Under the terms of the Contract, DiSabatino was obligated to supply all the material needed to complete Phase 5EXT except the limestone. The limestone was to be supplied by Nemours.

Article 3 of the Contract required that DiSabatino substantially complete Phase 5EXT no later than December 20, 1980, and provided for liquidated damages in the amount of $500 for each day's delay in completing the work beyond that date. Article 3 of the Contract reads in full:

The work to be performed under this Contract shall be commenced within ten (10) days and, subject to authorized adjustments, Substantial Completion shall be achieved not later than 20 December 1980. LIQUIDATED DAMAGES SHALL BE AS FOLLOWS: Five hundred dollars ($500) per consecutive calendar day for each day's delay in completing the work under this contract, beyond 20 December 1980.

This liquidated damages agreement between DiSabatino and Nemours is also referred to in the Special Conditions of the Contract. Paragraph 1.25A of these Special Conditions, entitled "Liquidated Damages," provides:

In case of failure on the part of the Contractor to complete the work within the time fixed in the contract or or (sic) any extensions thereof, the Contractor shall pay to the Owner, as fixed, agreed and liquidated damages, the sum of five hundred dollars ($500) for each calendar day of delay.

While there is disagreement between the parties as to the exact date of substantial completion, it is agreed that it was not achieved until more than a year after December 20, 1980.

## DISCUSSION

■ Where damages are uncertain and the amount agreed upon is reasonable, the parties to a contract may agree to liquidated damages to be paid upon breach of the contract. *See, e.g., Countywide Realty Corp. v. Albani,* 420 A.2d 1181 (Del.1980); *Lee Builders v. Wells,* 34 Del.Ch. 307, 103 A.2d 918 (1954); *In re Ross & Son, Inc.,* 10 Del.Ch. 434, 95 A. 311 (1915); *In re Plywood Co. of Pennsylvania,* 425 F.2d 151 (3d Cir.1970); *Chapman Decorative Co. v. Security Mut. Life Ins. Co.,* 149 F. 189 (3d Cir.1906). It is common for construction contracts to contain liquidated damages provisions, similar to those at issue here, prescribing the damages for which the contractor will be liable if the construction work is not completed within the time provided in the contract. *See generally* 25 C.J.S. *Damages* § 106 (1966); 13 Am.Jur.2d *Building and Construction Contracts* § 86 (1964); Annot., 12 A.L.R.4th 891 (1982); *Worthington Corp. v. Consolidated Aluminum Corp.,* 544 F.2d 227 (5th Cir.1976); *Trans World Airlines v. Travelers Indemnity Co.,* 262 F.2d 321 (8th Cir. 1959).

■ In actions for damages resulting from the failure to complete construction work in a timely fashion, "actual damages" and "liquidated damages" will not both be awarded. Where the parties have stipulated a figure as liquidated damages, that figure represents the outer limit of the injured party's recovery. *See Stone, Sand & Gravel Co. v. United States,* 234 U.S. 270, 34 S.Ct. 865, 58 L.Ed. 1308 (1913) (claimant bound by liquidated damages agreement and thereby barred from recovering actual damages incurred as result of breach); *In Re Plywood Co. of Pennsylvania, supra,* (party limited to liquidated damages as provided for in contract in the event of bankruptcy; actual damages suffered held not recoverable); *Ely v. Wickham,* 158 F.2d 233, 235 (10th Cir.1946) ("the injured party may not disregard the provision as to liquidated damages and seek a recovery measured by the actual damage suffered"); *Allpress v. McGill,* 246 S.W.2d 714 (Tex.Civ.App.1952) ("when damages are estimated in advance and liquidated by agreement, actual damages cannot also be recovered").

Clearly, however, the parties to a contract can provide that a liquidated amount will be recoverable in the event of a particular type or types of damage, while actual damages will be recoverable in the event of other forms of damage. Indeed, there can be no dispute that DiSabatino and Nemours did precisely that in the Contract. The issue thus posed by the current motion is which types of damages are within the scope of the liquidated damage clauses of the Contract and which are not. Unfortunately, it would be premature to resolve this issue in full; it can be significantly narrowed, however.

Nemours argues that the liquidated damage provisions of the Contract were intended to cover only damages in the form of

any loss of use of the premises as a hospital occasioned by a delay in the completion of Phase 5EXT and are not applicable to damages in the form of any adverse judgments Nemours may suffer on the claims of the follow-on contractors whether or not those claims are related to DiSabatino's tardy completion. I conclude that the liquidated damage provisions cannot be read so narrowly.

■ The Contract consists of (1) a document entitled "Standard Form of Agreement Between Owner and Contractor" (A.I.A. Document A101), (2) a printed form entitled "General Conditions of the Contract for Construction" (A.I.A. Document 201) with a typewritten insertion, (3) a typewritten set of "Special Conditions", and (4) the Drawings and Specifications. The four page "Standard Form of Agreement" identifies the parties, the project, the contract price, the method of payment, and the time for commencement and substantial completion. In addition, following the printed notation, "(Here insert any special provisions for liquidated damages relating to failure to complete on time)", the document stipulates that liquidated damages shall be $500 per day "for each day's delay in completing the work under this contract beyond 20 December 1980."

Unlike the "Standard Form of Agreement" and the "General Conditions", the "Special Conditions" were obviously drafted with reference to this particular project. The first section of the "Special Conditions" provides:

1.01 *General Scope Of Work*

A. The Alfred I. duPont Institute Hospital Project is being constructed in phases to expedite the completion of this much needed facility. Previous phases have included the utility services, foundations and basic structure for the building. The intent of this Phase, titled "5 EXT", is to enclose the building in order to provide a weather barrier for the expeditious completion of the remaining work. The enclosure of this building as defined by Phase 5EXT shall be completed prior to December 20, 1980.

The remainder of the Special Conditions stresses this same theme repeatedly; DiSabatino was to perform and complete its contract responsibilities so that the ability of the follow-on contractors to perform their work would not be impaired. *See, e.g.,* §§ 1.05 Coordination and Cooperation, 1.06 Schedule, and 1.07 Work Sequence. It is in this context that the final Special Condition requires the contractor to pay "as fixed, agreed and liquidated damages, the sum of $500.00 for each calendar day of delay."

These liquidated damage provisions literally encompass any economic loss to Nemours occasioned by DiSabatino's failure to achieve substantial completion by December 20, 1980, including loss in the form of judgments in favor of follow-on contractors arising from DiSabatino's delay in completion. Given the fact that DiSabatino and Nemours focused upon and were concerned over this particular kind of economic injury to Nemours, I am confident that the unlimited language of the liquidated delay damage provisions were intended to cover more than loss of use damages and to extend to claims by follow-on contractors based on DiSabatino's delay in completing its construction work.

Nemours argues that the intent behind the general language of the liquidated damage provisions can only be understood when the provisions are read in context with Section 6.2.5 of the General Conditions which provides as follows:

Should the Contractor wrongfully cause damage to the work or property of any separate contractor, the Contractor shall upon due notice promptly attempt to settle with such other contractor by agreement, or otherwise to resolve the dispute. If such separate contractor sues or initiates an arbitration proceeding against the Owner on account of any damage alleged to have been caused by the Contractor, the Owner shall notify the Contractor who shall defend such proceedings at the Owner's expense, and if any judgment or award against the Owner arises therefrom the Contractor shall pay or satisfy it and shall reimburse the Owner for all attorneys' fees and court

or arbitration costs which the Owner has incurred.

Nemours further asserts that the General Conditions specifically define one of the terms used in this provision as follows:

### 1.1.3  THE WORK

The Work comprises the completed construction required by the Contract Documents and includes all labor necessary to produce such construction, and all materials and equipment incorporated or to be incorporated in such construction.

According to Nemours, when "Paragraph 6.2.5 references damage to 'the *work* or property of any separate contractor' it includes damage to that contractor in the form of increased labor and material costs necessary to produce the construction." Thus, it is said Section 6.2.5 contemplates indemnification of Nemours for the full amount of any adverse judgments based on such increased costs and the scope of the liquidated damage provisions is limited to economic loss in the form of loss of use.[1]

The text of the General Conditions distinguishes, however, between "the Work", with a capital "W", and "work" in its dictionary sense. The latter is used in Section 6.2.5 and I read that section as requiring DiSabatino to indemnify Nemours with respect to claims based on DiSabatino's wrongful infliction of physical damage to property of another contractor or to work previously completed by such a contractor.

Thus, it does not suggest as Nemours urges, that all claims here asserted against Nemours by the follow-on contractors are excluded from the liquidated damage provisions of the Contract.

■ In addition, Nemours argues that based upon *City of Bridgeport v. United States Fidelity & Guaranty Company*, 105 Conn. 11, 92, 134 A. 252 (1926), even in the absence of an express indemnity provision covering the disputed territory, the liquidated damage provisions should be narrowed to exclude claims of follow-on contractors arising from the delay in completing Phase 5EXT. I do not agree, however. The crucial issue is one of the intent of the parties and must be determined on the basis of the text of their agreement. Here that text provides no basis for narrowing the scope of the liquidated damages provisions to the extent urged by Nemours.[2]

■ This does not mean that DiSabatino's liability on Nemours' counterclaims is limited to $222,500, however. The claims of the follow-on contractors do not arise solely from DiSabatino's failure to make the December 20, 1980 date. As earlier noted, the follow-on contractors allege that DiSabatino actively interfered with their efforts to perform their contracts. Indeed, DiSabatino's counsel acknowledged at oral agreement that some of this active interference may have allegedly occurred prior to

**1.** As indicated earlier, Nemours uses the phrase "loss of use" to refer to the loss of the use of the premises as a hospital between the time the project would have been completed absent DiSabatino's delay in completing Phase 5EXT and the time it ultimately will be completed. It is clear from the Contract, however, that the "use" the parties primarily had in mind when they agreed to the liquidated damage provisions was the use of the premises immediately after December 20, 1980 as a work site for the follow-on contractors.

**2.** The court in the *City of Bridgeport* case permitted recovery in excess of the liquidated damages sum based on claims of follow-on contractors for three reasons: (1) the court felt that the liquidated damage figure of $50/day was unreasonably small when compared with what might have been anticipated at the time of the execution of the contract in the way of third party claims resulting from delay; (2) the court concluded that damage from loss of use was much

more difficult to assess than the claims of follow-on contractors, and (3) the court found that there was no logical relationship between the liquidated damage sum and the performance bond required of the contractor. Nemours does not rely here on the first ground and the third ground reflects an apparent misunderstanding of the function of a performance bond. While I do not disagree with the court's evaluation of the relative difficulty of measuring the two forms of damage, I believe that there can be enough uncertainty in the evaluation of such third party claims that contracting parties may agree to provide a liquidated damage sum in advance. The fact that any such third party claims may ultimately be reduced to a judgment for a sum certain does not distinguish those claims from loss of use claims. Any claim becomes liquidated when litigated to judgment. Liquidated damage provisions are entered into with the hope that uncertain damages will not have to be litigated to judgment.

December 20, 1980 when DiSabatino and the follow-on contractors were working at the site contemporaneously. While Nemours and DiSabatino have parsed the language of the pleadings of the follow-on contractors in an effort to place their claims in one category or another, I conclude that it would be unwise to attempt to decide whether these claims are within or without the liquidated damage clause based solely on the pleadings. Accordingly, I will deny DiSabatino's motion for partial summary judgment.

Nemours makes two alternative arguments as to why partial summary judgment for DiSabatino should be denied: (1) Nemours is not bound by the liquidated damage provisions because DiSabatino "abandoned" the contract and (2) Nemours should be able to collect its actual damage in tort because DiSabatino was negligent in failing to meet its deadline. While it is unnecessary to resolve these issues in order to decide the instant motion, I make the following comments in the hope that they may narrow the scope of this litigation. First, I do not understand any of the pleadings to allege that DiSabatino abandoned its performance of the Contract. Second, the parties have by the Contract agreed that recovery from DiSabatino for any damage to Nemours arising from the failure of DiSabatino, negligent or otherwise, to complete performance by December 20, 1980 is to be limited to $500 per day.