**COUNTYWIDE REALTY CORP.,** a corporation of the State of Delaware, Plaintiff Below, Appellant,

v.

**Francis J. ALBANI and Penn Title Insurance Company,** a corporation of the Commonwealth of Pennsylvania, Defendants Below, Appellees.

Supreme Court of Delaware.

Submitted Nov. 15, 1979.

Decided Sept. 4, 1980.

---

Richard P. Beck, of Morris, James, Hitchens & Williams, Wilmington, for plaintiff–appellant.

John G. Mulford, of Theisen, Lank, Mulford & Goldberg, P. A., Wilmington, for defendants–appellees.

Before HERRMANN, C. J., and DUFFY and QUILLEN, JJ., sitting as Court en Banc.[1]

HERRMANN, Chief Justice (for the majority):

This is an appeal from a Superior Court post–trial judgment in favor of the defendants in this contest over an escrow fund in the amount of $22,000.

I.

These facts are undisputed:

The plaintiff Countywide Realty Corp. (Countywide) seeks from the defendant Penn Title Insurance Company (Penn Title) funds which Penn Title was to have held as

---

1. Justices McNeilly and Horsey have disqualified themselves in this case.

escrow agent under an Agreement for the Sale of Land, entered into between Countywide, as seller, and the defendant Francis J. Albani, as buyer. The Agreement was dated January 25, 1974, and recited a purchase price of $640,000. Under the Agreement, a down payment of $10,000 in cash was to be deposited with Penn Title in escrow.[2] Another $10,000 was to be paid in cash at settlement, which was scheduled for March 1, 1974; but the Agreement provided that the settlement date could be extended upon the payment of additional cash deposits of $2,000 per month by Albani.[3] The remaining $620,000 was to be paid in the form of two purchase money mortgages, guaranteed by a bank or lending institution satisfactory to Countywide.

Albani could not obtain financing for the project in time for the settlement date and requested an extension of time. Countywide agreed to a 30 to 60 day extension of the 45 day financing contingency period specified in the Agreement. When financing was still unavailable, Countywide sought to abrogate the Agreement, but Albani accomplished postponement of the settlement date by purportedly making six monthly $2,000 payments in cash to the escrow account in the hands of Penn Title. Upon the receipt of each $2,000 check, Penn Title advised Countywide's attorneys in writing, acknowledging receipt of each

check. However, neither the initial $10,000 deposit nor the additional monthly deposits were made "in cash," as required by the Agreement and as implied to Countywide's attorneys by Penn Title.[4] Instead, Penn Title was actually holding the $22,000, which included the initial down payment, in unnegotiated checks of Albani.

When it became apparent in June, 1975 that Albani could not proceed to settlement for lack of financing, the "deal" was called off. Upon rejection of its demand, Countywide then brought this action against Albani and Penn Title for the $22,000 which Penn Title was purportedly holding in escrow in cash. Countywide bases its action primarily upon Paragraph 10 of the Agreement which provided:

"10. Should Albani violate or fail to fulfill and perform any of the material terms and conditions of this Agreement, all sums paid by Albani on account of the purchase price or consideration herein shall be retained by Seller as liquidated damages for such breach, whereupon the rights and obligations of the parties hereunder will be at an end."

Countywide also claims that Albani abandoned any interest he might have had in the purported "escrow fund" by failing to list any such interest as an asset in subsequent bankruptcy proceedings, and by failing to

2. Paragraph 1(a) of the Agreement provided:
"(a) TEN THOUSAND DOLLARS ($10,-000.00) as cash deposit upon execution of this Agreement, to be held in escrow by Penn Title Company, State and Sproul Roads, Broomall, Pennsylvania, pending performance of their obligations by the parties hereto, the receipt whereof is hereby acknowledged by endorsement hereto; . . . ."

3. Paragraph 3 of the Agreement provided:
"3. Settlement shall be held on March 1, 1974 at such place in Wilmington, Delaware, or Philadelphia, Pennsylvania, as Albani shall direct. Extensions beyond the above date shall be granted by Seller to Albani, on a monthly basis, upon payment to Seller in advance, of an additional cash deposit of TWO THOUSAND DOLLARS ($2,000.00) for each and every month so extended. Notwithstanding the foregoing, Seller shall have no obligation to extend beyond October 1, 1974.* All sums paid as additional deposit shall be treated in the same

manner as the original deposit as provided for in paragraph 1(a) hereof."

4. Typically, Penn Title wrote as follows to Countywide's attorney as to each $2,000 monthly "payment" by Albani:
"We have today deposited in our escrow account an additional $2,000.00 covering Mr. Francis J. Albani's deposit on the above referenced property.
"This brings the escrow account to a total of $12,000.00 that we have deposited with us."
The final letter from Penn Title to Countywide's attorney stated:
"We have today deposited in our escrow account an additional $2,000.00 covering Mr. Francis J. Albani's deposit on the above referenced property.
"This brings the escrow account to a total of $22,000.00 [including the initial deposit of $10,000.] that we have deposited with us."

respond to a Request for Admissions in this case asking that he deny any claim to them.

Penn Title takes the position that it seeks instructions as a fiduciary escrow–holder; that it may be assumed for the purposes of this action (contrary to the facts and the representations to Countywide), that it holds the $22,000 in cash; but that it is confronted by Albani's potential claim under Paragraph 16(a) of the Agreement which provides:

> "Notwithstanding anything to the contrary stated herein, it is understood and agreed that if Albani is unable to secure a bank or lending institution guarantee satisfactory to seller for the purchase money mortgage, as provided in paragraph 1(c) hereof, within forty–five (45) days from date, this Agreement shall become null and void."

It appears that Penn Title is willing to pay any part of the $22,000 which the Court determines is owing to Countywide.

## II.

The Superior Court concluded that Paragraph 16(a) of the Agreement controls; and it held that, upon its finding of reasonable efforts by Albani to obtain financing, judgment *for the defendants followed under* that Paragraph. We must disagree.

■ The undisputed fact is that Albani was in default under the contract from its inception. Under Paragraph 1(a), he was obliged to deliver to Penn Title a $10,000. down payment "as cash deposit." He never did so. And to secure a monthly extension for settlement, he was obliged under Paragraph 3 to advance an "additional cash deposit" of $2000. He received 6 such monthly extensions under that Paragraph but he never made any cash deposit. On the basis of those defaults, Countywide has invoked Paragraph 10 of the Agreement and claims a right to receive as liquidated damages the sum which Albani should have paid in escrow.

■ But Penn Title seeks to cure Albani's *defaults* by offering to pay what Albani should have paid under Paragraphs 1(a) and (3). It offers to do that so that it may assert Albani's right under Paragraph 16(a) to terminate the Agreement if he could not secure the necessary bank financing. The Superior Court permitted Penn Title to defend on that ground but, in our judgment, it may not do so.

Penn Title's defense is based on the premise that Albani has some claim to the fund which Penn Title tacitly concedes that it should hold but does not. That is essential to Penn Title's argument because it is seeking to litigate, not its own, but Albani's contract right under Paragraph 16(a). On the record before us, however, Albani has abandoned any interest which he may have had to the phantom fund, and thus, Penn Title is without a factual basis for its argument.

■ And, even if, under some theory, Penn Title could assert a legal argument which Albani might have made based on a construction of the Agreement, the result is the same. Albani had a right under Paragraph 16(a) to terminate the Contract if he could not secure a bank guarantee but, clearly, he had such right only if he made the "cash deposit" called for at the time of execution of the Agreement and the "additional cash deposit" required for each monthly extension. Any other construction of the Agreement would give Albani the right to bind Countywide to compliance with its terms while he sought financing without putting up any of the consideration expressly required by the Contract.

■ We should also note two other difficulties with Penn Title's contentions. First, it is doubtful that Penn Title, as an escrow–holder, has standing to assert a defense, based on a contract between the principals, which might have been available to one of them (Albani) in litigation and the other contracting party. Second, Penn Title cannot by unilateral action on its part cure Albani's defaults; the provisions of Paragraph 10 are there for the benefit of the seller, Countywide, and it has not waived them.

Finally, while in the last analysis the final judgment must depend on the rights

of Countywide *vis–a–vis* Albani, Penn Title's claim to fair treatment certainly rises no higher than Albani's. Penn Title knew that Albani was not making payments in cash–indeed, it knew that he had not paid *any* cash–but it expressly misled Countywide into thinking that he had. In justice, Penn Title should not get an advantage from its deception by now being permitted to pay what Albani should have paid and then litigating the case (in Albani's place) on the premise that he had never been in default under the Agreement.

We hold that Penn Title is liable to pay over to Countywide the full amount of the $22,000, together with reasonable interest thereon.

Albani breached Paragraphs 1(a) and 3 of the Agreement by his undisputed failure to make any cash deposits. Penn Title may not now be permitted to rely on extension periods which were available to Albani under Paragraph 3 only "upon payment" of "additional cash deposit[s]."

■ As the result of the misrepresentations of the defendants, Countywide was deceived into taking its property off the market for a period of about 18 months without the cash security called for by the Agreement. It is simple and manifest justice that Countywide now have the liquidated damages provided for by Paragraph 10 to which it is entitled for Albani's violation and failure "to fulfill and perform * * * material terms and conditions of this Agreement," and Penn Title's complicity therein.

\*    \*    \*    \*    \*    \*

Reversed and remanded with instructions to enter judgment for the plaintiff against the defendants, jointly and severally, for the sum of $22,000, with interest as ascertained by the Trial Court; and for such other proceedings as may be consistent herewith.

QUILLEN, Justice, dissenting:

I dissent. While I tend to share the feeling of the majority on the equities of the case, I am regretfully unable to agree in their conclusion which I consider at the least premature.

In my judgment, it is necessary on the record presented to distinguish between two factors: the existence of the escrow fund and entitlement to the escrow fund. Penn Title concedes it has no defense based on a lack of a fund and perhaps it, as an interlocutory matter, should be required to literally create the fund. But evidently no one is concerned about Penn Title's ability to pay any judgment.

Penn Title, recognizing its responsibility belatedly, says treat it as if Albani had paid the money. Countywide, as its supplemental memorandum in this Court makes clear, has "proceeded on the postulated assumption that Penn Title as a fiduciary holds a *res* in the form of $22,000" and Countywide "has refrained from seeking to recover the contested $22,000 based on causes of action which were not alleged in the Complaint, i. e., fraud and promissory estoppel." It seems to me somewhat incongruous to accept Penn Title's agreement that it should be treated as if Albani had created the fund and then hold Penn Title liable under paragraph 10 of the agreement for the forfeiture of the fund because Albani did not create the fund being forfeited.

Nor does it help to say that Albani has abandoned his interest in a nonexistent fund. This is not a case where Albani has made no claim of right. To the contrary, Albani has maintained that Countywide is not entitled to the forfeiture of any "escrow". The fact that a bankrupt Albani is not spending money in this litigation over a nonexistent fund, while not commendable given the factual history, is certainly not hard to understand and hardly constitutes an abandonment. Albani simply has nothing to gain. It is Penn Title which is at risk. Penn Title's concession of its responsibility to Countywide for any money due under the escrow contract cannot be extended to constitute an absolute grant to Countywide regardless of the terms of the escrow. And the very existence of this litigation in its present form rests on Penn Title's concession.

The case is admittedly somewhat difficult to analyze due to two problem areas. First,

at the summary judgment stage, when the Superior Court effectively narrowed the issues and the scope of the trial, there was nothing in the record to indicate that the checks from Albani had never been negotiated by Penn Title. As I understand it, there was a total of $34,000 in unnegotiated checks. The $22,000 figure represents the portion for which Penn Title gave an express payment acknowledgment to Countywide and made the judicial concession which is the basis for the present posture of this litigation. It is hard to reconstruct the course of the litigation had the Superior Court at the summary judgment stage been aware of that effective misrepresentation and its character. This void is a key item in this appeal. To Countywide's prejudice, the nonexistence of the fund was not treated at all by the Court below either on summary judgment or at trial.

It should be noted, however, that there has been no adjudication relating to the character of any complicity by Penn Title in Albani's failure to deposit money into the escrow fund. Assuming such character to be one of mistake or negligence, one could easily surmise that honoring the escrow obligation, if any, might well suffice to satisfy Penn Title's duty. Assuming such character to be aggravated, then Countywide's request that punitive damages be considered may well have merit. The issue requires a trial.

The second problem area, as I see it, is that the Superior Court, in denying Countywide's motion for summary judgment, in effect ruled as a matter of law that the extension, based on the subsequent $2,000 deposits, did not alter the provision that the agreement would be null and void and the parties restored to the status quo prior to the agreement if financing was not obtained. Thus, the sole issue tried was whether reasonable efforts were made to obtain financing. While there is nothing improper about pretrial rulings as a matter of law, it seems to me, in this instance, the ruling clearly foreclosed a genuine issue of fact as to what the parties actually contemplated at the time of the extension. Is it beyond genuine controversy that Countywide would agree to hold its property off the market for an extended period and run a substantial risk of receiving no compensation? At the time of the extension, what did the parties intend as to the relationship of the extension and the financing clauses in the agreement? Was it not Albani who undertook the risk of deposit forfeiture if financing was not obtained? At the very least, "it seems desirable to inquire thoroughly into [the facts] in order to clarify the application of the law to the circumstances." *Ebersole v. Lowengrub*, Del. Supr., 180 A.2d 467, 470 (1962).

Thus, while I agree that the case must be reversed, I think on the present posture of the case the question of whether Countywide is entitled to the "escrow fund" depends on the intention of Countywide and Albani at the time of the contract extension. It is, in my judgment, a question of fact. As I see it, the majority opinion never reaches this question and thus never reaches the merits of this appeal.

I would reverse and remand the case for a new trial. Because of Countywide's belated knowledge of the facts relating to the escrow fund, I would expressly authorize an opportunity to liberally amend the pleadings. I do not speculate on what the result would be or which party would benefit if other claims suggested by this appeal were made part of the full adjudication of the case.