PATHE INDUSTRIES, INC., a Delaware
Corporation, and Wissam Ezzedine,
Plaintiffs, Appellants,

v.

CADENCE INDUSTRIES CORPORA-
TION, a Delaware Corporation,
Defendant, Appellee.

Supreme Court of Delaware.

Submitted on Rehearing En Banc
April 18, 1980.

Decided July 17, 1980.

Submitted on Motion for Reargument
Nov. 20, 1980.

Decided Jan. 2, 1981.

Victor F. Battaglia (argued) and Samuel R. Russell, of Biggs & Battaglia, Wilmington, for plaintiff Pathe Industries, Inc.

Edward B. Maxwell,2d (argued), H. James Conaway, Jr. and Jack B. Jacobs, of

Young, Conaway, Stargatt & Taylor, Wilmington, for plaintiff Wissam Ezzedine.

Steven J. Rothschild (argued) and Edward P. Welch, of Skadden, Arps, Slate, Meagher & Flom, Wilmington, for defendant.

Before HERRMANN, C.J., and DUFFY, McNEILLY, QUILLEN and HORSEY, JJ., constituting the Court en banc.

DUFFY, Justice.

This is an action by Pathe Industries, Inc. (Pathe) and Wissam Ezzedine against Cadence Industries Corporation (Cadence).

Pathe initiated the lawsuit in the Court of Chancery, seeking the appointment of a trustee to act on behalf of certain of its stockholders in regard to the exercise of warrants physically held by Pathe but equitably owned by such stockholders and titled in their respective names. Denied that relief, Pathe joined Ezzedine in an amended complaint to compel Cadence to issue and deliver to Ezzedine, by reason of his exercise of the warrants, valid certificates for 43,200 shares of Cadence common stock. The Court of Chancery determined that Pathe was without the power and authority to assign the warrants to Ezzedine and granted defendant's motion for judgment on the pleadings. Plaintiffs appeal; we reverse.[1]

I

The relevant facts are these:

In 1967, Pathe and Cadence entered into an agreement through which Cadence purchased the assets and assumed the recorded liabilities of Pathe's active subsidiary. The terms of the agreement, the total consideration for which equalled $9,751,420, called for an exchange of the assets of Pathe's subsidiary for: (1) $3,025,000 in cash; (2) a "due bill" for 40,000 shares of Cadence com-

1. A panel of this Court filed an opinion dated January 21, 1980, reversing the judgment of the Court of Chancery. Thereafter, a motion for rehearing by the Court *en Banc* was granted. Following an opinion by the Court *en Banc* dated July 17, 1980, a motion for reargument was filed and granted. This opinion supersedes both prior opinions, which are hereby withdrawn.

mon stock; (3) 45,000 shares of Cadence $3.50 cumulative preferred stock, series B; (4) a warrant to purchase 209,220 shares of Cadence common stock; and (5) a "put option" requiring Cadence to repurchase the preferred stock over a twenty-year period at $100 a share.

Subsequently, differences arose between Pathe and Cadence regarding the payment of dividends on the preferred stock and the repurchase of those shares pursuant to the "put option." Under the impetus of a Chapter XI bankruptcy proceeding involving Pathe, in 1972 Pathe and Cadence reached a second agreement to resolve those differences. The second agreement provided for the following: (1) sale to Cadence of the 45,000 shares of the cumulative preferred stock, series B, for $990,000; (2) delivery to Pathe of 40,000 shares of Cadence common stock in exchange for the "due bill" issued by Cadence; (3) payment of dividend arrearages on the preferred stock; (4) termination of the "put option"; and (5) exchange of the 1967 warrant for the purchase of 209,220 shares of Cadence common stock for a 1972 warrant for the same number of shares. As part of the 1972 agreement, Pathe promised not to exercise the warrant in its own name[2] but, instead, agreed to exchange the 1972 warrant for warrants issued to Pathe's stockholders individually, giving them an option to by a *pro rata* share of the 209,220 shares of Cadence common stock.

The warrants, by their terms, were exercisable for fourteen months after their transmittal to Pathe's stockholders. On September 22 and 23, 1977, pursuant to the agreement, Cadence mailed the warrants to Pathe's stockholders. A substantial number of those warrants (36,238.45), however, were returned as undeliverable because the addressees were unknown at their respective mailing addresses. Those warrants were then delivered to Pathe's president.

By November 1, 1978, thirty days before expiration date of the warrants, Pathe had been successful in locating the owners of outstanding warrants for only 4,000 shares. Seeking to preserve the value of the warrants for its other unlocated shareholders, Pathe attempted to have equivalent warrants issued in its own name in exchange for the undelivered warrants. Cadence refused to comply with that request.

Then, on November 22, 1978, Pathe filed a complaint in the Court of Chancery seeking orders which would: (1) authorize Pathe to exercise the warrants as trustee on behalf to its unlocated stockholders; (2) require Cadence to recognize the timely exercise of the warrants by Pathe as trustee; and (3) appoint Pathe as trustee for proceeds resulting from the exercise or sale of the warrants of the underlying Cadence stock. The Court denied Pathe's request for relief, concluding that to do so would extend the stated termination date of the warrants. Since the agreement did not provide for an extension of that date, the Court reasoned that it was powerless to rewrite the agreement to provide for such relief through a trusteeship or otherwise.

In an attempt to preserve at least some benefit for its stockholders, Pathe, in the waning hours of the effective period of the warrants, transferred them to plaintiff Ezzedine for $50,000. Late on November 30, 1978, Ezzedine attempted to exercise the warrants but, on December 4, 1978, Cadence refused to honor such request.

Pathe and Ezzedine then filed an amended complaint in the Court of Chancery seeking an order to compel the transfer to Ezzedine of the shares represented by the undelivered warrants. That relief was also denied by the Court of Chancery. Plaintiffs then docketed this appeal.

## II

Although Pathe had possession of the undelivered warrants under its agreement

---

**2.** Section 2.02 of the agreement states in pertinent part:

"The 1972 warrants shall not be exercisable by [Pathe] or any subsidiary of [Pathe] and shall be exercisable only by such distributees, their successors or assigns, other than [Pathe] ...."

with Cadence,[3] the Court of Chancery determined that Pathe did not owe any duty to the unlocated stockholders with respect to such warrants and, therefore, refused to recognize Pathe's authority to either seek appointment of a trustee to protect such interests or to transfer the warrants to Ezzedine and hold the proceeds of that sale for them. Our view of Pathe's status and attendant authority is significantly different.

■ It is undisputed that the equity in the warrants was the property of the Pathe shareholders and that the undelivered warrants were in the nature of unclaimed property of the shareholders who could not be located. Under these circumstances, and given the relationship between Pathe and the warrant-owners, it is our view that Pathe was in the position of an escrow-holder of the then undelivered warrants. We so hold.

### A.

■ We address initially the issue involving the Pathe-Ezzedine agreement, namely, whether Pathe, in its capacity as escrow holder, had the authority and power to sell the undelivered warrants to Ezzedine. We hold that it did not.

Ezzedine asserts that Pathe was a fiduciary for its unlocated shareholders and, as such, had implied authority to do whatever was necessary to protect its beneficiaries from substantial loss. Thus, the argument goes, Pathe's implied authority enabled it to convey good title to the warrants to Ezzedine and, consequently, Cadence's refusal to honor the exercise of those warrants by Ezzedine was erroneous in law.[4]

Cadence, on the other hand, adopts the reasoning of the Court of Chancery that the fiduciary duty of corporate directors to stockholders extends only to the management and control of corporate property, and not to shareholders' personal property, such as the warrants here in question. Therefore, Cadence submits, Pathe lacked authority and power to assign the warrants to Ezzedine and, as a result, its refusal to recognize the validity of the Pathe-Ezzedine agreement and honor the exercise of the warrants by Ezzedine was proper.

We agree with the result reached by the Trial Court, and proposed here by Cadence, but we travel by a different route. Pathe, as an escrow-holder, did not have any title to the undelivered warrants; the unlocated stockholders possessed the legal and the equitable interest in them. 28 *Am.Jur.2d* Escrow § 10. In our view, then, Pathe could not convey any right or interest in the warrants to Ezzedine and, therefore, that transaction is void and of no effect. See 28 *Am.Jur.2d* Escrow § 24. Although the Court of Chancery's decision was grounded on a different rationale, it follows that its judgment was correct in refusing to compel Cadence to deliver shares of its common stock to Ezzedine.

### B.

We move now to the issue involving appointment of a trustee to protect the inter-

---

**3.** Section 2.01 of the agreement provides:

"... Pathe shall return the 1972 Warrant to Cadence in exchange for 1972 Warrants registered in the names of Pathe's shareholders of record on the record date fixed by Pathe in connection with distribution of such warrants in order to permit Pathe to distribute one 1972 Warrant to each stockholder of record of Pathe to enable each to purchase his pro rata share of the 209,220 shares."

**4.** As we have noted, Pathe initiated this lawsuit in the Court of Chancery, seeking the appointment of a trustee. After being denied that relief, it amended its complaint and joined Ezzedine in a request for an order compelling Cadence to deliver its common stock to Ezze-

dine in exchange for the warrants. Pathe appealed the denial of that request, advancing the same argument which Ezzedine here presents. Pathe now asserts, on reargument, that it did not have the authority to assign the warrants to Ezzedine.

Such a shift in position might ordinarily prejudice or estop Pathe, if it were seeking relief in its own right. It is not, however, and we are satisfied that Pathe's purpose throughout the litigation has been to secure relief for the benefit of its shareholders. We think that the positions Pathe has taken are consistent with that purpose and, in any event, its actions may not prejudice the rights of its unlocated shareholders.

ests of the unlocated Pathe stockholders. This issue raises three questions which we will consider in turn: (1) does this Court have jurisdiction to examine that issue? (2) does Pathe have standing to seek appointment of a trustee? (3) could the Court of Chancery grant such relief under the terms of the Pathe-Cadence agreement?

### (1)

Initially, we address the threshold argument made by Ezzedine, namely, that the validity of his agreement with Pathe is the only issue properly presented on appeal and, therefore, this Court is powerless to order the appointment of a trustee to protect the interests of the unlocated stockholders.

■ In our view, this contention ignores the central question in the lawsuit: what relief, if any, should be ordered for the benefit of the Pathe shareholders who have not been apprised of their respective property interests in the undelivered warrants? That interest, of course, devolved upon them as part payment for the purchase of a subsidiary of the corporation in which they held shares. To provide an equitable answer to that question where, as here, all interested parties are before us, this Court has the power to search the entire record for truth and justice. See *Weinberg v. Baltimore Brick Company*, Del.Supr., 112 A.2d 517 (1955). On that foundation, we will consider whether a trustee should have been appointed by the Court of Chancery.

■ Ezzedine also argues that if we order the appointment of a trustee in this case, he will have been deprived of property without due process of law, in violation of the Fourteenth Amendment. As we see it, there is no merit to that Constitutional argument. Any property interest Ezzedine may have in the warrants would be divested not by the appointment of a trustee, but by invalidation of his agreement with Pathe, that is, by the contract through which he had acquired the warrants. And certainly Ezzedine has had ample opportunity to be heard on that issue.

### (2)

Having determined that this Court has jurisdiction to decide this issue, we turn to the argument advanced by Cadence, on the basis of *Countywide Realty Corp. v Albani*, Del.Supr., 420 A.2d 1181 (1980): an escrow-holder cannot cure a failure to act, by persons on whose behalf it is holding property, in order to prevent expiration of contract rights and, hence, Pathe lacked standing to petition for the appointment of a trustee. We do not read *Albani* that broadly and, in any event, the record before us is clearly distinguishable because it involves the authority to act of an escrow-holder who holds property owned by persons unaware of their rights, rather than by persons who have defaulted on their rights, as in *Albani*.

■ In its function as escrow-holder, Pathe was required to exercise reasonable skill and diligence in handling the undelivered warrants. See 28 *Am.Jur.2d* Escrow § 16. And, as a fundamental principle, equity requires that one (Pathe) who holds in escrow an equitable property interest (the warrants) owned by others (the unlocated stockholders), but cannot deliver the property to the owners before it becomes valueless (the expiration date), has a right (and perhaps duty) to invoke the aid of the Court of Chancery in an effort to protect the interests of the equity owners. Thus, we hold that Pathe had standing to seek the appointment of a trustee to act on behalf of the shareholders entitled to exercise the warrants.

### (3)

■ Finally, Cadence argues that even if Pathe had standing to petition the Court of Chancery for the appointment of a trustee, such relief is not available because to grant it would, in effect, rewrite the Pathe-Cadence agreement. Specifically, Cadence relies on the rationale of the Chancellor that (a) the Pathe-Cadence agreement lawfully provided that the warrants in issue would expire on November 30, 1978, (b) a trusteeship would extend the time in which the warrants could be exercised beyond the expiration date, and (c) thus, the appointment

of a trustee would constitute impermissible judicial revision of a private contract. See *Hajoca Corporation v. Security Trust Co.,* Del.Super., 25 A.2d 378 (1942).

The short answer to this hypothesis is that, although the date for exercise of the undelivered warrants has long since passed, Pathe's petition for the appointment of a trustee to act in a timely manner on behalf of the unlocated shareholders *preceded* the expiration date and, accordingly, such relief could have been (and should have been) ordered without rewriting the agreement. It follows, then, that the Court of Chancery erred in denying Pathe's petition for the appointment of a trustee to act in a timely manner on behalf of the unlocated Pathe shareholders entitled to exercise the warrants. And we hold that, in fashioning an equitable remedy, the Court has the power to turn back the clock to the error in denying the appointment of a trustee. See 1 *Pomeroy's Equity Jurisprudence* (5 ed.) § 116.

\*   \*   \*   \*   \*   \*

The judgment below is reversed and the case is remanded under the following instructions:

(1) The Pathe-Ezzedine transaction is rescinded as being the unauthorized action of an escrow-holder, without prejudice to Ezzedine's right to buy the warrants as provided in (2) below.

(2) Pathe (or some other suitable person or corporation) shall be appointed trustee for the unlocated Pathe stockholders, with authority to take possession and exercise the warrants on terms approved by the Court, or to take such other action with respect thereto as the Court in its discretion may determine.

(3) Cadence shall honor the exercise of the warrants by such trustee or transferee, as though exercised on or before November 30, 1978.

(4) The property or proceeds resulting from such exercise shall be deposited by the trustee into Court to await claims by the persons entitled thereto.

(5) The Court of Chancery shall conduct such further proceedings as may be necessary to implement the foregoing and as may be consistent herewith.