Filed 8/28/20  Quinn v. Halachian CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| LAWRENCE D. QUINN, et al., | B296272 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BC666284) |
| v. | |
| MARISELA HALACHIAN, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Affirmed.

DiJulio Law Group, R. David DiJulio and Tiffany Krog for Plaintiffs and Appellants.

No appearance for Defendants and Respondents.

_____

Plaintiffs sued defendants for property damage allegedly caused by their negligent maintenance of a retaining wall that provides lateral support to plaintiffs' properties. Defendants are a California limited liability company and its sole member. Trial court entered order granting summary judgment in favor of the one natural-person member finding no triable issue of fact existed implicating her personally in the allegedly negligent conduct.

Plaintiffs purport to appeal from that order. We notified plaintiffs they may be appealing from a non-final order, and that only final judgments are appealable. We agree with plaintiffs that we may treat the order granting summary judgment as incorporating a corresponding judgment of dismissal. But, plaintiffs provide no argument as to whether their appeal complies with the final judgment rule.

We nevertheless reach the merits of the appeal because we conclude the judgment of dismissal is appealable. There is an exception to the final judgment rule applicable in multi-party litigation, known as the "final as to a party exception," that authorizes review of a judgment of dismissal as to one party when other parties remain in the case. But, there is also a limitation to that exception that counsels that the dismissed party's interests be "separate and distinct" from the parties that remain in the case. We hold that limitation is not a bar to appellate review here because plaintiffs adduced no evidence showing a "unity of interest" exists between the dismissed and remaining defendant.

We hold the trial court did not err in finding no material disputed issue of fact existed as to natural person's liability because plaintiffs failed to adduce any admissible evidence of her

2

personal involvement in the allegedly negligent conduct at issue in this case.

We affirm the trial court's order of dismissal.

## BACKGROUND

### A. Factual Background

The plaintiffs in this real property case are two property owners who each own adjacent plots of land. Their plots receive lateral support from a retaining wall located on a single plot of land once owned by defendants.[1]

The plaintiffs are Lawrence Quinn (Quinn), suing in his capacity as trustee of the "Lawrence D. Quinn and Ramona M. Quinn 2011 Living Trust Dated 11/19/11," and Olivia Saunders (Saunders). Quinn's property is located at 2257 Thelma Avenue, Los Angeles (the Quinn Property). Saunders' property is located at 2251 Thelma Avenue, Los Angeles (the Saunders Property). This opinion will sometimes refer to both properties collectively as the "Thelma Properties."

The defendants are Bay Harbor Investment Properties, LLC (Bay Harbor) and Marisela Halachian (Halachian). Bay Harbor is a California limited liability company. Halachian is the sole member of Bay Harbor.[2] Bay Harbor owned the property

---

[1] "Lateral support is the support received by a parcel of real property from the adjacent land separated from it by a vertical plane," in this case, a retaining wall. (6 Miller & Starr, Cal. Real Estate (4th ed. 2019) § 17:19, p. 17-60 ["Lateral support— Common Law Rule"], fn. omitted.)

[2] A California limited liability company is a hybrid business entity formed under the California Revised Uniform Limited Liability Company Act (Corp. Code, § 17701.01 et seq.)

located at 2306 North Eastern Avenue, Los Angeles (the Eastern Avenue property) from July 2016 through June 2017.[3]

The Eastern Avenue property sits behind and below the Thelma Properties. The retaining wall was originally constructed around the same time the home located on the Eastern Avenue property was built. Its purpose was to support the earth upon which the Thelma Properties sit. The retaining wall was originally about four feet tall and made of cement. The wall existed in this condition and successfully supported the Thelma Properties for over 20 years.

Some time after the wall was built, soil was added to the Thelma Properties, which raised the earth supporting them to about 18 inches above the height of the cement wall. When Bay Harbor purchased the Eastern Avenue property, a row of cinder blocks had been added to the retaining wall to hold back the additional soil that had been added to the Thelma Properties.

---

consisting of at least one member who owns membership interests. (Corp. Code, § 17704.01, subd. (a); see generally 9 Witkin, Summary of Cal. Law (11th ed. 2017) Corporations, § 41, pp. 841-842.)

[3] In her declaration, Halachian states the other member of Bay Harbor was her late husband. Her declaration also states Bay Harbor acquired the Eastern Avenue property one month before her husband passed away. Because Bay Harbor acquired the Eastern Avenue property in July 2016, and sold the property 11 months later in June 2017, there were 10 months during which the property was owned by Bay Harbor even though it had only one member during that period.

Bay Harbor subsequently removed the row of cinder blocks.[4]

## B.    Procedural History

Plaintiffs sued Bay Harbor and Halachian claiming removal of the cinder blocks caused the older, cement portion of the retaining wall to crack, leaving the entire structure unstable. Plaintiffs claimed their properties were damaged because the earth which supported the properties partially subsided which deprived them of lateral support from the Eastern Avenue property.[5]

---

[4] According to defendants' separate statement filed in support of their motion for summary judgment, "Bay Harbor removed the cinder blocks from atop the [r]etaining [w]all on or about April 3, 2017 as it was ordered to do by Los Angeles City inspectors." However, no evidence was adduced during the summary judgment process showing that Halachian herself, nor any other natural person, removed the cinder blocks.

[5] Real property cases involving "subsidence" of the earth may arise in two types of claims: those involving subjacent support and those involving lateral support. "Subjacent support" cases arise "[w]hen one person owns the surface of land and another person owns the subjacent area, or its minerals . . . ." (6 Miller & Starr, *supra*, § 17:18, p. 17-58, fn. omitted.) In such cases, "the surface owner has an absolute right to the perpendicular (subjacent) support of his or her property in its natural condition by the subjacent strata." (*Ibid.*, fn. omitted.)

This case involves the rights that coterminous surface owners have to lateral and subjacent support. (6 Miller & Starr, *supra*, § 17:18, pp. 17-58 to 17-59, fn. omitted; see also Civ. Code, § 832 ["Each coterminous owner is entitled to the lateral and subjacent support which his land receives from the adjoining

Their complaint, filed June 23, 2017, and the pleading operative on this appeal, asserted six causes of action against Bay Harbor and Halachian: (1) damages and permanent injunctive relief (by Quinn); (2) damages and permanent injunctive relief (by Saunders); (3) private nuisance (by Quinn); (4) private nuisance (by Saunders); (5) negligence (by Quinn); and (6) negligence (by Saunders).

Defendants moved for summary judgment on all causes of action. They claimed the cinder blocks had to be removed because they were notified by city officials that they constituted a building code violation.

As to Halachian's liability, defendants argued there was no triable issue of fact that lead to her personal liability since she "has never owned the [Eastern Avenue property] and has therefore never been responsible for the condition of the wall." Defendants argued Halachian's membership in Bay Harbor did not, by itself, "make her responsible with regard to the wall in any way."

The court granted the motion as to Halachian. The court ruled there was no triable issue of material fact as to Halachian's personal liability because plaintiffs had neither pled nor adduced admissible evidence that Halachian *herself* did anything involving the retaining wall. The court held that defendants' admission that "Bay Harbor removed the cinder blocks" was not itself an admission that Bay Harbor's sole member—Halachian— was also involved. Plaintiffs appear to have sued Halachian, the court reasoned, simply "because she is an officer of Defendant

---

land, subject to the right of the owner of the adjoining land to make . . . excavations . . ."].)

6

Bay Harbor, and for no other reason."**6**  The court rejected plaintiffs' theory that Halachian was personally liable because, as a member of Bay Harbor, she " 'knew or should have known' " of Bay Harbor's tortious conduct.

The court denied the motion as to Bay Harbor, however. Plaintiffs introduced the declaration of an expert who found multiple defects in the retaining wall, including "large visible vertical cracks."  The expert's recommendation was to remove and replace the wall.  Defendants' disputed that any such defects were their responsibility and insisted the wall was buckling under the weight of the additional two feet of top-soil plaintiffs themselves added to their property.  The trial court properly denied the summary judgment motion as to Bay Harbor because this dispute was a triable issue of material fact properly left to the trier of fact.

Plaintiffs timely appealed the trial court's order granting summary judgment as to Halachian.

---

**6** The record on appeal indicates Halachian is a "member" of Bay Harbor, not an "officer."  The trial court was thus inaccurate in characterizing Halachian as an "officer."  Limited liability companies have "managers," not "officers."  And while limited liability companies may be managed by their members (in so called "member-managed" LLC's), they may also be managed by non-members (in so called "manager-managed" LLC's.)  (Corp. Code, § 17704.07, subds. (a) and (c); see, e.g., *Swart Enterprises, Inc. v. Franchise Tax Bd.* (2017) 7 Cal.App.5th 497, 501 [distinguishing between member managed and manager managed LLC's].)

7

## DISCUSSION

### A.     Appellate Jurisdiction

Plaintiffs purport to appeal from the trial court's order granting summary judgment in favor of Halachian.

We notified plaintiffs after filing their notice of appeal that the trial court's order may not be an appealable final judgment because an appeal must be taken from the judgment entered after an order granting summary judgment.  (Code Civ. Proc. § 437c; *Levy v. Skywalker Sound* (2003) 108 Cal.App.4th 753, 761.)

This letter alerted plaintiffs to two potential—and distinct—jurisdictional problems with their appeal.  First, they were purporting to appeal from an order, but appeals must ordinarily be taken from judgments, not orders.  Second, an appeal must be taken from a final judgment, i.e., a judgment that disposes of all the causes of action between the parties.  But here, the action is not final because Bay Harbor remains in the case.

Plaintiffs filed a supplemental brief urging us to exercise our discretion to either deem the order as incorporating a final judgment, or, to treat their notice of appeal as a petition for writ of mandate, citing *Avila v. Standard Oil Co.* (1985) 167 Cal.App.3d 441.  Plaintiffs' supplemental brief did not address whether their appeal complied with the final judgment rule by virtue of the pending litigation against Bay Harbor.

The right to appeal in California is statutory.  (*Superior Wheeler Cake Corp. v. Superior Court* (1928) 203 Cal. 384, 385; accord, *Powers v. City of Richmond* (1995) 10 Cal.4th 85, 108.)  Under Code of Civil Procedure section 904.1, subdivision (a)(1), an appeal must be taken "[f]rom a judgment" (absent certain exceptions not applicable here).  We have consistently construed

8

this section as imposing the requirement that parties may only appeal from a "final judgment." (See 9 Witkin, Cal. Procedure (5th ed. 2008) Appeal, § 96, pp. 158-160 [collecting cases].) As more fully discussed below, a "final judgment" is one that " ' "terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." ' [Citations.]" (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304.)

### 1. *Appeals Must Ordinarily be Taken from Judgments*

While our review is generally limited to appeals of judgments—not orders—we observe that a trial court's entry of a "judgment" is not strictly necessary so long as the order functions like a final judgment. (Code Civ. Proc., § 904.1, subd. (a); *Agosto v. Board of Trustees of Grossmont-Cuyamaca Community College Dist.* (2010) 189 Cal.App.4th 330, 335, fn. 3; *Daggs v. Personnel Com. of Modesto* (1969) 1 Cal.App.3d 925, 930.) "[W]hether an adjudication is final and appealable" turns on the substance and effect of the trial court's order. (*Griset v. Fair Political Practices Com.* (2001) 25 Cal.4th 688, 698.)

We exercise our discretion to construe the order as incorporating summary judgment in favor of Halachian and interpret plaintiffs' notice of appeal to be from the summary judgment. (See *Avila v. Standard Oil Co.*, *supra,* 167 Cal.App.3d at p. 445.)

### 2. *The Final Judgment Rule in the Context of Multiparty Litigation*

Plaintiffs' supplemental brief does not address what impact, if any, the pending litigation against Bay Harbor has upon our analysis. Nevertheless, because the Court of Appeal

9

has an independent duty to raise questions involving our own jurisdiction, we must address this issue even if we are unaided by relevant briefing.  (See *Jennings v. Marralle* (1994) 8 Cal.4th 121, 126; *Olson v. Cory* (1983) 35 Cal.3d 390, 398.)

Code of Civil Procedure section 904.1, subdivision (a)(1), authorizes appeals "[f]rom a judgment, except an interlocutory judgment . . . ."  As indicated above, our courts have consistently held this provision effectively codifies the common law "one final judgment rule."  (See, e.g., *Griset v. Fair Political Practices Com.*, *supra*, 25 Cal. 4th at p. 697; see also *Otay River Constructors v. San Diego Expressway* (2008) 158 Cal.App.4th 796, 803 [clarifying that the Legislature's elimination of "final" from the predecessor to Code Civ. Proc., § 904.1 (former Code Civ. Proc., § 963, subd. 1, which then stated appeals may be taken "[f]rom a *final* judgment"), did not alter the "final judgment rule" itself].)

A popular formulation of the rule defines a "final judgment" as one which "terminates the proceeding in the lower court by completely disposing of *the matter* in controversy."  (*Henneberque v. City of Culver City* (1985) 172 Cal.App.3d 837, 841, italics added; see also *Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 443, italics added [" '[A]n appeal cannot be taken from a judgment that fails to complete the disposition of *all the causes of action between the parties* even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as "separate and independent" from those remaining' "]; *Art Movers, Inc. v. Ni West, Inc.* (1992) 3 Cal.App.4th 640, 645, italics added ["optimal appellate review is achieved by allowing appeals only after *the entire action* is resolved in the trial court"].)

10

Multiple policy considerations lie behind this rule. Piecemeal disposition of a matter by taking frequent trips to the Court of Appeal wastes judicial resources. (See *Griset v. Fair Political Practices Com.*, *supra*, 25 Cal.4th at p. 697.) The Court of Appeal is not a referee to be consulted multiple times in a single litigation. Premature appeals will also produce uncertainty and delay in the trial court. (See *Kinoshita v. Horio* (1986) 186 Cal.App.3d 959, 966-967 [reviewing five policy considerations].) The record on appeal will also be better developed if a single appeal of the entire matter is taken. (*Id.* at p. 967.)

While our Supreme Court in *In re Baycol Cases I & II* (2011) 51 Cal.4th 751, 757 (*Baycol Cases*) reiterated that the "final judgment rule's deep common law and statutory roots and the substantial policy considerations underlying it" demand strict application of the rule and a reluctance to create exceptions, it also observed that two "exceptions" to the final judgment rule are venerable and accepted.

The first exception permits an appeal of an "order . . . against a party in a collateral proceeding growing out of the action." (*Sjoberg v. Hastorf* (1948) 33 Cal.2d 116, 119.) This exception, known as the "collateral order doctrine," applies if the issue underlying the order seeking to be appealed "is truly collateral in that it is 'distinct and severable' from the subject matter of the underlying litigation. [Citation.]" (*Apex LLC v. Korusfood.com* (2013) 222 Cal.App.4th 1010, 1016.) The order seeking to be appealed must also "direct[ ] payment of money or performance of an act." (*Id.* at p. 1015; see also *Marsh v. Mountain Zephyr, Inc.* (1996) 43 Cal.App.4th 289, 297-298 [grouping these requirements together under the heading of the

11

*Sjoberg* test]; but see *Muller v. Fresno Community Hospital & Medical Center* (2009) 172 Cal.App.4th 887, 899 [noting a split of authority over whether an appealable collateral order must always involve payment of money or performance of an act].) This exception is not relevant here.

The second exception arises in multiparty cases. Frequently called the "final as to a party" exception, it permits an appeal from a judgment that leaves no issue remaining to be decided as to one party. A leading practice guide provides the following illustration: "[I]n a single plaintiff's suit against two defendants (D1 and D2), a judgment or order resolving all issues between plaintiff and D1 is immediately appealable even though the action is still pending against D2." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2019) ¶ 2:91, pp. 2-66 to 2-67.)

This illustration would support the appealability of the trial court's summary judgment ruling in Halachian's favor. Quinn and Saunders sued Halachian and Bay Harbor; the order under review dismissed Halachian; only Bay Harbor remains in the case. But, the "final as to a party" exception is not automatically applicable every time fewer than all parties are dismissed from an action.

Witkin summarizes the limitation to the "final as to a party" as follows: "It is well settled that where parties have *distinct interests*, there can be a separate, final, and appealable judgment for each." (9 Witkin, Cal. Procedure, *supra*, § 109, p. 174, italics added.) We have elsewhere held "[t]he ['final as to a party'] exception only applies . . . where the interests of the otherwise uninvolved party are *separate and distinct* from the interests of parties whose rights have not been finally

12

determined." (*Fleuret v. Hale Constr. Co.* (1970) 12 Cal.App.3d 227, 230, italics added.)

Our recent cases do not explain this "distinct interests" prerequisite for applying the "final as to a party" exception. Instead, our cases point back to a pair of Supreme Court cases from the last century: *Howe v. Key System Transit Co.* (1926) 198 Cal. 525 (*Howe*) and *Rocca v. Steinmetz* (1922) 189 Cal. 426 (*Rocca*). (See, e.g., *Baycol Cases*, *supra*, 51 Cal.4th at p. 759 [citing *Rocca* and *Howe* as the source of the final as to a party exception].) Because our research has not revealed an explanation of the "distinct interests" prerequisite to the "final as to a party" exception, we briefly examine these leading cases to see why this exception was created in the first place.

In *Howe*, *supra*, 198 Cal. 525, railroad passengers who were injured in a collision with another train sued a railroad company and multiple railroad personnel in a single action. The individual defendants cross-complained against the railroad company attempting to shift liability onto their employer. The trial court dismissed the cross-complaints and the individual defendants appealed. Even though the primary action between the injured passengers and the railroad company remained pending after dismissal of the cross-complaints, our Supreme Court held the individual defendants could nevertheless appeal dismissal of their cross-complaints. It reasoned: "The circumstance that a particular judgment may not be binding upon all the parties to the action does not prevent it from being a final judgment within the code provisions relating to appeals. [Citation.] In the present case, *the issues* tendered by the cross-complaints, which were stricken from the files, are *entirely severable* from the issues made by the complaints and answers."

(*Id.* at p. 533, italics added.) Thus, in *Howe*, the court was comfortable lifting the "final judgment" rule that would otherwise bar interlocutory appellate review because the "issues" underlying the claims were "severable."

Next, in *Rocca, supra*, 189 Cal. 426, a father and son were sued as joint tortfeasors when the car that the son was driving was involved in an accident that killed a passenger. The plaintiff sued the father on a negligent entrustment theory, and sued the son for simple negligence. The trial court dismissed the case against father, and the case against the son went to trial. The plaintiff appealed dismissal of its case against the father even though their case against the son remained pending. Their appeal was dismissed because no final judgment had yet been rendered in the case as a whole. Our Supreme Court reversed. The court explained: "The fact that the defendant [father] is sued as the owner of the automobile and [the son] is sued as the perpetrator of the tort does not make either of them any the less liable to have a judgment rendered against him while the action is allowed to continue as to the other defendant." (*Id.* at p. 428.)

Further motivating the court in *Rocca* was the following policy consideration we find particularly applicable to the instant case: "[T]o hold the [plaintiff] bound to wait until the final judgment against the other party before taking an appeal from the judgment against the first party already rendered is wholly unreasonable." (*Rocca, supra*, 189 Cal. at p. 428.) The court is cognizant that parties to a judgment rendered in multiparty cases should be given the finality of appellate review unless there is a compelling reason to defer review until the "entire action" has been disposed of. Indeed, when our Supreme Court recently cited *Rocca* in *Baycol Cases*, it cited precisely this principle as

14

"[u]nderlying this original settled rule" (*Baycol Cases*, *supra*, 51 Cal.4th at p. 759), viz., the "final as to a party exception."

Applying the final judgment rule can thus be a difficult task. On the one hand, we must be cognizant of the "substantial policy considerations underlying" the rule, such as reducing uncertainty in the underlying litigation, avoiding (and deterring) piecemeal litigation, and conserving the resources of the appellate courts. But, on the other hand, we must grant appellate review when the conditions for an exception have been met lest we arbitrarily delay an appeal until final judgment has been rendered as to every party.

As aptly characterized by one commentator: "[T]he final judgment rule is a *rule*, designed to balance the underlying competing policy interests of finality—the inconvenience and costs of piecemeal review on the one hand, and the danger of denying justice by delaying appellate review on the other." (Shah, *Increase Access to the Appellate Courts: A Critical Look at Modernizing the Final Judgment Rule* (2014) 11 Seton Hall Cir. Rev. 40, 58.)

Here, Halachian has been dismissed from the action. We might paraphrase our Supreme Court in *Rocca* and observe that now "[n]o other judgment can be entered against" Halachian, as she "will go free if the case goes no further against [her]." (*Rocca*, *supra*, 189 Cal. at p. 428.) That would seem to authorize the instant appeal. Likewise, unless there is a compelling reason to defer review, it is "wholly unreasonable" for us to force *either party* here to "wait until the final judgment against the other party before taking an appeal from the judgment against the first party already rendered." (*Ibid.*)

15

The only question remaining is to determine whether Halachian and Bay Harbor have the requisite "distinct interests" our cases insist must apply before this exception is met. While our cases do not explain the content of this "distinct interests" requirement, we are not wholly without guidance. There is a class of cases where the interests between a dismissed and remaining defendant are never distinct as a matter of law: cases against sureties and the principal obligor. The leading case is *Call v. Alcan Pacific Co.* (1967) 251 Cal.App.2d 442 in which the plaintiff was a subcontractor who agreed to perform the drywall work on a construction project. The subcontractor walked away from the job unfinished, and the general contractor threatened suit. The subcontractor responded by filing for an accounting and injunctive relief against the general contractor. The general contractor cross-complained against the subcontractor for breach of contract, and named the insurance company who was surety on the subcontractor's performance bond as an additional defendant. The trial court entered judgment in favor of the surety insurance company, and several months later, entered judgment in favor of the principal subcontractor. The general contractor appealed dismissal of its case against the surety and the subcontractor seriatim.

The Court of Appeal considered whether the "exception [to the final judgment rule] where several parties have distinct interests" applied where a surety was dismissed before its principal. (*Call v. Alcan Pacific Co.*, *supra*, 251 Cal.App.2d at p. 449.) It found the exception did not apply because the general contractor's suits against the subcontractor and its surety were suits against parties who had "*a unity of interest* between them [such] that a judgment in favor of the [surety] alone is not a final

16

judgment from which an appeal lies." (*Ibid.*, italics added; see also *Fleuret v. Hale Constr. Co.*, *supra*, 12 Cal.App.3d at p. 230 [also a surety case, holding: "The ('final as to a party') exception only applies . . . where the interests of the otherwise uninvolved party are separate and distinct from the interests of parties whose rights have not been finally determined"].)

To better determine the impact of these surety cases upon the instant appeal, we review what a surety is and why its interests overlap with those of its principal obligor. The Civil Code defines a "surety" as "one who promises to answer for the debt, default, or miscarriage of another." (Civ. Code, § 2787.) Moreover, if the principal obligor is found liable to a third party, the surety "is liable to the creditor immediately upon the default of the principal, and without demand or notice." (*Id.*, § 2807.)[7]

None of these features of suretyship is present in the instant case. In fact, the relationship of a limited liability company and its member(s) is precisely the opposite. If Bay Harbor loses to plaintiffs, Halachian is not automatically liable for the resulting judgment. To the contrary, our limited liability company act is clear that "the debts, obligations, or other liabilities" of a limited liability company "do not become the debts, obligations, or other liabilities of a member . . . solely by

---

[7] We observe that a performance bond, such as the type of surety bond at issue in *Call v. Alcan Pacific Co.* and *Fleuret v. Hale Constr. Co*, is "a species of a surety bond . . . in which the surety 'guarantee[s] that obligations undertaken by the principal will be completed under the terms of the bonded contract.' [Citation.]" (*JMR Construction Corp. v. Environmental Assessment & Remediation Management, Inc.* (2015) 243 Cal.App.4th 571, 594.)

reason of the member acting as a member . . . for the limited liability company." (Corp. Code, § 17703.04, subd. (a)(2); see also 5 Ballantine & Sterling, Cal. Corporation Laws (2020) § 901.03 ["In general, LLCs afford their members and managers (including officers) limited liability essentially like that enjoyed by a corporate shareholder"].]

Likewise, plaintiffs have not adduced any evidence of an agreement between Halachian and Bay Harbor that would make her responsible for Bay Harbor's debts and liabilities. (See, e.g., 5 Ballantine & Sterling, *supra*, § 904.14 ["a member of an LLC may agree to be obligated personally for any or all of the LLC's debts, obligations, and liabilities, as long as the agreement to be obligated is set forth in the articles of organization or in a written operating agreement that specifically references the code section authorizing liability"].)

Halachian and Bay Harbor thus do not have a "unity of interest" that would prevent application of the "final as to a party" exception and that would delay appellate review until the entire action is resolved.

Finding no bar to applying the "final as to a party" exception to this appeal, we now review the appeal on its merits.[8]

## B.     Summary Judgment Was Proper as to Halachian

Plaintiffs challenge the court's order of dismissal on four grounds.

---

[8] In light of our decision to review this case on the merits, we do not reach plaintiffs' request that we treat their appeal as a petition for writ of mandate.

18

First, they assert the trial court erred when it observed: "Plaintiffs sued Defendant Halachian because she is an officer of Defendant Bay Harbor, and for no other reason." Plaintiffs dispute this and reference their complaint which asserts: "Halachian failed to maintain the retaining wall"; "in late 2016 . . . Halachian destroyed the top portion of the retaining wall"; "Defendants' failure to maintain the retaining wall and damage thereto caused a subsidence of the earth and soil"; and "Defendants[ ] knew or should have known that the failure to maintain and destruction of a portion of the retaining wall would cause damage to the Quinn Property"; "In late 2016, the [retaining wall] was damaged with Defendants' knowledge, consent, and direction"; and "Quinn gave notice to Defendants, and each of them, of the damage caused by the nuisance, and requested its abatement, but Defendants, and each of them, have refused." (Capitalization omitted.)

This argument misses the mark by focusing on the complaint's allegations instead of the evidence plaintiffs adduced in opposition to Halachian's motion for summary judgment. "The purpose of summary judgment is to penetrate evasive language and adept pleading and to ascertain, by means of supporting and opposing papers, the presence or absence of triable issues of fact." (6 Witkin, Cal. Procedure (5th ed. 2008) Proceedings Without Trial, § 202, p. 641.) The party opposing a motion for summary judgment "must file an affidavit or other evidence in opposition to a motion that is supported by evidence; the party may not rely on a pleading alone, regardless of whether it is verified." (6 Witkin, *supra*, § 222, p. 663.)

Second, plaintiffs argue that case law imposes personal liability on a "corporate shareholder, officer, or director who

19

participates in the tortious conduct complain[ed] of." This is of course, correct: "Nothing in the provisions limiting liability of members of an LLC is intended to affect a member's liability to third parties for the member's participation in tortious conduct." (5 Ballantine & Sterling, *supra*, § 904.14.) But this principle simply means creating an LLC does not immunize a natural person from liability for his or her own torts, and here the question is precisely whether plaintiffs have adduced any evidence that Halachian *herself* did *anything* to cause plaintiffs' injuries.

Third, plaintiffs claim Halachian "actually admitted to her awareness and approval of the tortious conduct." They cite from Halachian's declaration submitted in support of her motion for summary judgment wherein she declares: "I am a member of [Bay Harbor]"; "The only other member of Bay Harbor is my late husband . . . . Since my husband's death, I have handled the business affairs of Bay Harbor. These matters include the remodeling and sale in 2017 of [the Eastern Avenue property]"; and "The cinder blocks atop the [r]etaining [w]all were removed on or about April 3, 2017 as Bay Harbor was ordered to do by the Los Angeles City Inspector who spoke with [Halachian]."

We agree with the trial court that none of these statements creates a triable issue of fact that Halachian herself removed the cinder blocks at issue. Halachian admitted she handled the "remodeling and sale" of the Eastern Avenue property, but she did not admit she removed the cinder blocks. Rather, her declaration simply states that the cinder blocks "were removed." It does not identify *who* did the removing. There is no admission that Halachian, as opposed to some other person, actually removed the blocks. True, there is an admission Bay Harbor was

20

involved in removing the cinder blocks, but the trial court is correct that such an admission does not automatically transfer to Bay Harbor's member(s). Such a rule would turn the limited liability feature of limited liability companies on its head.

Fourth, plaintiffs complained "Halachian provided no evidence in her [summary judgment] papers negating an essential element of [plaintiffs'] claims against her, i.e., that she was aware of, consented to and participated in the failure to maintain the retaining wall." (Capitalization and underscoring omitted.) This argument inverts the burden of proof applicable once a defendant has made a prima facie showing she is entitled to summary judgment. Once a defendant who moves for summary judgment has "shown that one or more elements of the cause of action, even if not separately pleaded, cannot be established, . . . the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to the cause of action or a defense." (Code Civ. Proc., § 437c, subd. (c)(p)(2).) It is not *Halachian's* burden to negate the allegations in plaintiffs' complaint once she has made a prima facie showing there is no triable issue of fact as to her liability; it is *plaintiffs'* burden to negate that showing with admissible evidence *they* must adduce.

Because plaintiffs adduced no admissible evidence tying Halachian personally to removal of the cinder blocks, the trial court properly dismissed Halachian from this lawsuit.

21

**DISPOSITION**

The judgment is affirmed.  The parties are to bear their own costs on appeal.

NOT TO BE PUBLISHED

SINANIAN, J.*

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.