NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-2926
_____

XCOAL ENERGY & RESOURCES

v.

BLUESTONE ENERGY SALES CORPORATION;
SOUTHERN COAL CORPORATION; JAMES C. JUSTICE, II,
                                                    Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(District Court Civil No. 1-18-cv-00819)
District Judge:  Honorable Leonard P. Stark

Submitted Under Third Circuit L.A.R. 34.1(a)
July 15, 2022

BEFORE:  GREENAWAY, JR., MATEY, and NYGAARD, *Circuit Judges*

(Filed: July 21, 2022)
_____

OPINION*
_____

NYGAARD, *Circuit Judge.*

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

After a bench trial, the United States District Court for the District of Delaware entered a judgment in favor of Xcoal Energy & Resources ("Xcoal") on its claims and against Bluestone Energy Sales Corporation ("Bluestone"), Southern Coal Corporation, and James C. Justice, II (collectively "the Bluestone Parties") on their counterclaims. The Bluestone Parties appealed, and now argue it was error for the District Court to conclude the Coal Supply Agreement ("the Agreement") between Xcoal and Bluestone was ambiguous, that Bluestone breached said Agreement, and that the liquidated damages provision in the Agreement was enforceable under Delaware law. Seeing no error, we will affirm.

As we agree with the District Court's findings of fact, we need not labor over them and instead refer the reader to the District Court's able description of the record in its opinion. On appeal from a bench trial, "we review the District Court's factual findings, and mixed questions of law and fact, for clear error, and we review the Court's legal conclusions *de novo*." *Alpha Painting & Constr. Co. v. Del. River Port Auth.*, 853 F.3d 671, 682-83 (3d Cir. 2017). We review a District Court's holding that an affirmative defense has been waived for abuse of discretion. *In re Frescati Shipping Co, Ltd.*, 886 F.3d 291, 313 (3d Cir. 2018).

Under Delaware law, whether a contract is ambiguous is a question of law. *Rhone-Poulenc Basis Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del. 1992). "[A] contract is ambiguous only when the provisions in controversy are reasonably or fairly susceptible of different interpretations or may have two or more different meanings." *Id*. at 1196. Here, the Bluestone Parties contend the Agreement unambiguously

2

obligated Xcoal to provide the empty railcars onto which the coal at Bluestone's mining site would be loaded. We disagree.

The plain terms of the Agreement render it ambiguous. True, as the Bluestone Parties posit, the Agreement contains language which a reasonable person could interpret as obligating Xcoal to provide the empty rail cars, such as the reference to "Buyer's railcar" in Article 3.5. At the same time, however, a reasonable person could interpret numerous provisions in the Agreement to go the other way. For instance, Article 3.5 provides "Buyer shall designate to Seller the scheduling, routing and method of Shipments of Coal purchased under the Agreement." Appx. at 873. The plain meaning of designate is "to indicate and set apart for a specific purpose, office, or duty." *Merriam-Webster's Online Dictionary*, https://www.merriam-webster.com/dictionary/designate (last visited June 28, 2022); *see also Designate*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining designate as "[t]o choose (someone or something) for a particular job or purposes."). Applying this plain meaning, Article 3.5 could reasonably be understood to mean "Buyer shall indicate and set apart Seller to handle the specific duties of scheduling, routing, and method of Shipments of Coal purchased under the Agreement." Moreover, as the District Court found, a reasonable person could conclude Articles 2.1, 2.2, and 3.5 together obligate Bluestone to provide the empties, since Articles 2.1 and 3.5 require Bluestone to sell, deliver, and load the coal, and Article 2.2 provides title passes to Xcoal after the coal is loaded.

Because the provisions within the four corners the Agreement are reasonably susceptible of different interpretations, we agree with the District Court's conclusion that the Agreement is ambiguous and reject the Bluestone Parties' argument that the District

3

Court found ambiguity only by improperly relying on extrinsic evidence. For the same reasons, we agree the District Court was correct to rely on extrinsic evidence of the parties' course of performance and industry practice to resolve this ambiguity.[1] *See In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39, 57 (Del. 2019).

Our review of this extrinsic evidence also leads us to conclude it was Bluestone who bore responsibility for providing the empty cars. Xcoal's Chief Executive Officer testified during the bench trial that "Xcoal's actions to get empty railcars delivered ends with the permitting process . . . once Xcoal permits the trains, Norfolk Southern coordinates the placement of those empty railcars with Bluestone." Appx. at 201. Furthermore, Mark Hamilton, a former employee of the company from which the empty railcars were ordered, explained it is typically "the producer's responsibility to order the empties when they were ready for them." Appx. at 303. Lastly, Bluestone's own correspondence established Bluestone believed it had the responsibility to order the railcars. Appx. at 666 (email from Bluestone employee to Xcoal employee stating "Please submit the loading dates going forward to Alice Ann and me as well. We do the scheduling."); Appx. 773-84 (emails showing Bluestone made multiple requests for empty railcars from Norfolk Southern without copying Xcoal). In light of this evidence, we conclude, as the District Court did,

---

[1] We find no merit in the Bluestone Parties' argument that any ambiguity in the Agreement should be resolved by resorting to 6. Del. Code § 2-503(1)(b). Section 2-503(1)(b) applies when a contract is silent. Silence is not the same as ambiguity, however. 11 *Williston on Contracts* § 30:4 (4th ed. 2020). Further, a contract must be construed to mean "what a reasonable person in the position of the parties would have thought it meant." *Rhone-Poulenc Basic Chemicals Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1196 (Del. 1992). Here, such meaning can be found through the parties' course of performance and the practices of the industry.

that Bluestone was required to provide the empty railcars, and it breached the Agreement by failing to do so.

Having determined that Bluestone breached the Agreement, the sole issue remaining is whether the District Court erred by concluding Xcoal was entitled to the damages provided for by Article 10.3 of the Agreement. The Bluestone Parties contend Article 10.3 is unenforceable as a matter of public policy under Delaware law since it allows Xcoal to recover both actual and liquidated damages and thus constitutes an impermissible penalty.

The District Court rejected this argument on two grounds. First, the District Court concluded the Bluestone Parties waived this argument, because they raised it in a motion to dismiss at trial without first raising, or even suggesting, this argument in their proposed pretrial order. Second, the District Court found this argument lacked merit since Delaware law did not allow for recovery of both actual and liquidated damages, and Article 10.3 only allowed recovery for liquidated damages "in addition to other damages available at law." Appx. at 61, 883. We agree with the District Court.

We discern no abuse of discretion in the District Court's waiver holding. While Federal Rule of Civil Procedure 12(h)(2)(C) allows a party to raise a motion to dismiss for failure to state a claim at trial, they must still comply with a District Court's pretrial order under Federal Rule of Civil Procedure 16(d). Here, the District Court's form pretrial order made clear the Court would preclude a party from seeking relief based on claims and defenses not described in the draft pretrial order. Thus, because the Bluestone Parties failed

5

to raise, let alone mention, this defense in their proposed pretrial order, this defense was waived.[2]

Even if the Bluestone Parties had not waived this argument, however, we agree with the District Court that it lacks merit. The Bluestone Parties have neither established that the damages from Bluestone's breach are capable of accurate calculation, nor that the damages provided for by Article 10.3 are an unreasonable estimate of damages. Thus, the Bluestone Parties have failed to establish the damages contemplated by Article 10.3 constitute an impermissible penalty under Delaware law. *Delaware Bay Surgical Services, P.C. v. Swier*, 900 A.2d 646, 651 (Del. 2006). The Bluestone Parties nevertheless maintain Article 10.3 is unenforceable because it allows Xcoal to obtain actual and liquidated damages. But as the District Court correctly found, Article 10.3 is self-limiting and only allows for the recovery of damages "available at law." Appx at 61. Because a party cannot recover both actual and liquidated damages under Delaware law, *see Gilbane Bldg. Co. v. Nemours Found.*, 666 F. Supp. 649, 652 (D. Del. 1985), actual damages were thus not available at law and could not be recovered under Article 10.3.

The Bluestone Parties further contend this reading of the Agreement goes against Delaware's black-letter law, since it would eliminate Xcoal's recovery of actual damages, and actual damages are a common law remedy that will not be taken away unless that result is "imperatively required." Appellant's Brief at 27 (quoting *Gotham Partners, LP v.*

---

[2] Because we also agree with the District Court that Article 10.3 is not against Delaware's public policy, we disagree with the Bluestone Parties' contention that their argument cannot be waived because the contract is void ab initio.

6

*Hallwood Realty Partners, LP*, 817 A.2d 160, 176 (Del. 2002)). But such result is required here to enforce the voluntary agreement of the sophisticated parties in this case—another of Delaware's important public policies regarding the freedom of contract. *NACCO Industries, Inc. v. Applica Inc.*, 997 A.2d 1, 35 (Del. Ch. 2009). Reading out actual damages would also comport with the severability provision in Article 14.2 of the Agreement.

Altogether, we are unpersuaded by the Bluestone Parties' arguments that Article 10.3 is unenforceable, as well as their arguments regarding the ambiguity of the Agreement. So we will affirm.